**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MUDPIE, INC.,
*Plaintiff-Appellant*,

v.

TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA,
*Defendant-Appellee.*

No. 20-16858

D.C. No.
4:20-cv-03213-JST

OPINION

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted August 11, 2021
San Francisco, California

Filed October 1, 2021

Before: Morgan Christen and Danielle J. Forrest, Circuit
Judges, and Michael M. Anello,* District Judge.

Opinion by Judge Christen

---

* The Honorable Michael M. Anello, United States District Judge for the Southern District of California, sitting by designation.

## SUMMARY[**]

### California Insurance Law

The panel affirmed the district court's order dismissing Mudpie, Inc.'s claims against its insurer in Mudpie's diversity putative class action seeking to recover under the insurance policy's "Business Income" and "Extra Expense" coverage after state and local authorities in California issued several public health orders in response to the COVID-19 pandemic.

Mudpie filed suit on behalf of itself and a putative class of all retailers in California that: purchased comprehensive business insurance coverage from Travelers Casualty Insurance Company of America that included coverage for business interruption; filed a claim for lost business income following California's Stay at Home order; and were denied coverage. The parties disputed whether Mudpie adequately alleged a "direct physical loss of or damage" to property under the Policy.

The panel held that California courts would construe the phrase "physical loss of or damage to" as requiring an insured to allege physical alteration of the property. The panel rejected Mudpie's interpretation of "direct physical loss of or damage to" to be synonymous with "loss of use." Mudpie's complaint did not identify a distinct, physical alteration of the property. The panel affirmed the district court's ruling that Mudpie's claimed losses were not covered by the Policy, and

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

concluded that the district court did not err by dismissing Mudpie's claims for declaratory relief, breach of contract, and breach of the covenant of good faith and fair dealing.

The panel held that the Policy's Virus Exclusion barred coverage for Mudpie's claimed losses. The panel rejected Mudpie's argument that its losses were not subject to the Policy's Exclusion because the losses were caused by Stay at Home Orders that restricted Mudpie's use of its property, not directly by the virus. California courts apply the efficient proximate (meaning predominate) cause of the loss. The panel held that Mudpie did not plausibly allege that the efficient cause (the cause that set others in motion) was anything other than the spread of the virus throughout California, or that the virus was merely a remote cause of its losses.

## COUNSEL

Andre M. Mura (argued), Eric H. Gibbs, and Amanda M. Karl, Gibbs Law Group LLP, Oakland, California; Victoria S. Nugent and Geoffrey Graber, Cohen Milstein Sellers & Toll PLLC, Washington, D.C.; for Plaintiff-Appellant.

Theodore J. Boutrous Jr. (argued), Richard J. Doren, and Deborah L. Stein, Gibson Dunn & Crutcher LLP, Los Angeles, California; Stephen E. Goldman and Wystan M. Ackerman, Robinson & Cole LLP, Hartford, Connecticut; for Defendant-Appellee.

Gabriel K. Gillett, John H. Mathias Jr., David M. Kroeger, and Michael F. Linden, Jenner & Block LLP, Chicago, Illinois; Angelo I. Amador, Restaurant Law Center,

Washington, D.C.; for Amicus Curiae Restaurant Law Center.

Jeffrey R. White, Counsel; Tobias L. Millrood, President; American Associate for Justice, Washington, D.C., for Amicus Curiae American Association for Justice.

David B. Goodwin and Breanna K. Jones, Covington & Burling LLP, San Francisco, California; Jad H. Khazem, Covington & Burling LLP, Washington, D.C.; for Amicus Curiae United Policyholders.

Laura A. Foggan, Crowell & Moring LLP, Washington, D.C., for Amici Curiae American Property Casualty Insurance Association and National Association of Mutual Insurance Companies.

---

## OPINION

CHRISTEN, Circuit Judge:

Mudpie, Inc. appeals a district court order dismissing its claims against Travelers Casualty Insurance Company of America (Travelers). Mudpie operates a children's store located in San Francisco that sells clothing, toys, books, and other goods. Mudpie alleges that it purchased a comprehensive commercial liability and property insurance policy from Travelers (the Policy), and made a claim pursuant to the Policy's "Business Income" and "Extra Expense" coverage in 2020 after state and local authorities in California issued several public health orders in response to the COVID-19 pandemic. Mudpie claimed the orders prevented it from operating its store. Travelers denied the claim.

Mudpie filed a putative class action seeking declaratory relief and asserting claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  The district court granted Travelers' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and Mudpie timely appealed.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We affirm the district court's judgment.

I

On March 4, 2020, Governor Gavin Newsom declared a state of emergency in California in response to the threat posed by COVID-19.  Governor Newsom issued an executive order on March 12, 2020, that "[a]ll [California] residents are to heed any orders and guidance of state and local public health officials, including but not limited to the imposition of social distancing measures, to control the spread of COVID-19."

The City and County of San Francisco issued a "Shelter in Place Order" on March 16, 2020.[1]  This order required residents to remain at their place of residence unless performing "essential activities."  *Id.* at 1.  The Shelter in Place Order also declared that "[a]ll businesses with a facility in the County, except Essential Businesses . . . , are required to cease all activities at facilities located within the County except Minimum Basic Operations."  *Id.* at 3.  Failure to comply with San Francisco's Shelter in Place Order was deemed a misdemeanor punishable by a fine, imprisonment, or both.  *Id.* at 1.

---

[1] City and County of San Francisco, Order of the Health Officer No. C19-07 (Mar. 16, 2020), https://sfgsa.org/sites/default/files/Docum ent/OrderC19-07ShelterinPlace.pdf.

On March 19, 2020, Governor Newsom in conjunction with the State Public Health Officer ordered "all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors." Mudpie alleges that it complied with the local and state orders (collectively, the Stay at Home Orders) and as a result, was not able to operate its store after March 16, 2020.

Mudpie filed a claim with Travelers under the Policy on April 27, 2020.  In its letter denying the claim, Travelers stated that "[b]ecause the limitations on [Mudpie's] business operations were the result of the Governmental Order, as opposed to 'direct physical loss or damage to property at the described premises' . . . this Business Income and Extra Expense coverage does not apply to [Mudpie's] loss." Travelers further stated that the Policy's coverage excluded "'loss or damage caused by or resulting from any virus' – such as the COVID-19 virus."

Mudpie filed suit in the United States District Court for the Northern District of California on behalf of itself and a putative class of "[a]ll retailers in California that purchased comprehensive business insurance coverage from [Travelers] which includes coverage for business interruption, filed a claim for lost business income following California's Stay at Home order, and were denied coverage."  Mudpie's complaint asserted three causes of action: (1) a claim for declaratory relief that "its business income losses are covered and not precluded by exclusions or other limitations" in the Policy; (2) a claim for breach of contract; and (3) a claim for a breach of the implied covenant of good faith and fair dealing.  Mudpie did not allege that COVID-19 was present in its storefront premises during the relevant period.

Travelers filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion argued that Mudpie was not entitled to Business Income or Extra Expense coverage because Mudpie had "not alleged . . . any facts demonstrating that [it] suffered a 'direct physical loss of or damage to' insured property," and because the Policy included a Virus Exclusion.[2] Mudpie countered "that its inability to operate and occupy its storefront following the government closure orders [wa]s a direct physical loss of property covered by [the Policy]."

The district court granted Travelers' motion, ruling that Mudpie "fail[ed] to allege any intervening physical force beyond the government closure orders" and thus was "not entitled to Business Income or Extra Expense coverage" pursuant to the Policy. The district court declined to consider Travelers' argument that the Virus Exclusion barred Mudpie's recovery. The court dismissed the complaint without prejudice but gave Mudpie leave to amend. Mudpie responded by filing a notice advising "it [would] not be amending its Complaint, as permitted by the Court's Order." The court then dismissed the complaint with prejudice, and Mudpie timely appealed.

## II

We review de novo an order granting a motion to dismiss for failure to state a claim under Federal Rule of Civil

---

[2] Travelers also argued that Mudpie could not establish entitlement to the Policy's "Civil Authority" coverage. Mudpie's complaint alleged that its losses were insured under the Policy's Civil Authority coverage, but Mudpie abandoned this argument in the district court, and it is not a part of this appeal.

Procedure 12(b)(6). *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017). "[W]e accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff." *Id.* (quoting *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012)).

"When interpreting state law, we are bound to follow the decisions of the state's highest court, and when the state supreme court has not spoken on an issue, we must determine what result the court would reach based on state appellate court opinions, statutes and treatises." *Diaz v. Kubler Corp.*, 785 F.3d 1326, 1329 (9th Cir. 2015) (internal quotation marks and brackets omitted) (quoting *Paulson v. City of San Diego*, 294 F.3d 1124, 1128 (9th Cir. 2002) (en banc)). "We will ordinarily accept the decision of an intermediate appellate court as the controlling interpretation of state law," *Tomlin v. Boeing Co.*, 650 F.2d 1065, 1069 n.7 (9th Cir. 1981), "unless [we] find[] convincing evidence that the state's supreme court likely would not follow it," *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007).

## III

Pursuant to the Policy, Travelers agreed to "pay for direct physical loss of or damage to [Mudpie's] Covered Property . . . caused by or resulting from a Covered Cause of Loss." At oral argument before our court, defense counsel agreed the "Covered Property" included Mudpie's storefront premises and its contents. The coverage also extended to certain losses to Mudpie's "Business Income" and "Extra Expense" incurred to recover from a covered loss. In relevant part, the Policy provides:

> [Travelers] will pay for the actual loss of Business Income [Mudpie] sustain[s] due to the necessary "suspension" of [Mudpie's] "operations" during the "period of restoration". The "suspension" *must be caused by direct physical loss of or damage to property* at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. . . .

> . . . .

> [Travelers] will also pay Extra Expense (including Expediting Expenses) to repair or replace the property, but only to the extent it reduces the amount of loss that otherwise would have been payable under [the "Business Income" provision].

Under California law, the burden is on the insured to establish that a claimed loss "is within the basic scope of insurance coverage." *Aydin Corp. v. First State Ins. Co.*, 959 P.2d 1213, 1215 (Cal. 1998). "[O]nce an insured has made this showing, the burden is on the insurer to prove the claim is specifically excluded." *Id.* Where, as here, a policy covers "direct physical loss of or damage to" property, the "direct physical loss requirement is part of the policy's insuring clause and accordingly falls within [the insured's] burden of proof." *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 115 Cal. Rptr. 3d 27, 36 (Ct. App. 2010).

The parties dispute whether Mudpie adequately alleged a "direct physical loss of or damage to" property under the

Policy, and they offer competing interpretations of that phrase. California courts require that we interpret an insurance policy according to the "clear and explicit" meaning of the terms as used in their "ordinary and popular sense." *AIU Ins. Co. v. Superior Ct.*, 799 P.2d 1253, 1264 (Cal. 1990) (internal quotation marks omitted); *Bay Cities Paving & Grading, Inc. v. Laws.' Mut. Ins. Co.*, 855 P.2d 1263, 1270 (Cal. 1993) ("The clear and explicit meaning of the[] provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage[,] controls judicial interpretation.") (internal quotation marks and citations omitted). We must "construe [insurance policies] as would a reasonable layperson, not an expert, attorney, or a historian." *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 84 P.3d 385, 391 n.2 (Cal. 2004) (citing *Crane v. State Farm & Cas. Co.*, 485 P.2d 1129 (Cal. 1971)).

California courts have interpreted coverage provisions similar to the Policy's "direct physical loss of or damage to property" term.[3] For example, in *MRI Healthcare*, the California Court of Appeal considered the meaning of the phrase "direct physical loss" in a business insurance policy. 115 Cal. Rptr. 3d at 31–32. The plaintiff in *MRI Healthcare*, MRI Healthcare Center (MHC), was required to demagnetize, or "ramp down," its MRI machine when its landlord repaired storm damage to the roof over the room housing the machine. *Id.* at 32. After the roof was repaired, the machine failed to restart for several months, causing MHC to lose business income. *Id.* at 31–32. MHC's business insurance policy provided coverage for lost income sustained during a business

---

[3] Accordingly, we decline Mudpie's request to certify its question to the California Supreme Court. *See* Cal. R. Ct. 8.548(a)(2).

interruption "caused by *accidental direct physical loss to property* at the described premises." *Id.* at 31.  MHC's insurer denied coverage for lost business income during the period when the MRI machine was nonoperational, *id.* at 32, and the superior court entered summary judgment in favor of the insurer, *id.* at 30.

The California Court of Appeal affirmed the superior court's ruling, explaining "direct physical loss 'contemplates an actual change in insured property . . . occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory.'" *Id.* at 37 (quoting *AFLAC Inc. v. Chubb & Sons, Inc.*, 581 S.E.2d 317, 319 (Ga. Ct. App. 2003)).  In other words, "[f]or loss to be covered, there must be a 'distinct, demonstrable, physical alteration' of the property." *Id.* at 38.  The court cited Couch on Insurance § 148:46,[4] which explains:

> The requirement that the loss be "physical" . . . is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

The California appellate court concluded there was no coverage because there had been no "distinct, demonstrable, physical alteration" of the MRI machine. *MRI Healthcare*, 115 Cal. Rptr. 3d at 38.  Rather, the machine was turned off

---

[4] 10A STEVEN PLITT ET AL., COUCH ON INSURANCE § 148:46 (3d ed. 2021) (footnotes omitted).

and could not be turned back on due to the inherent nature of the machine itself rather than actual physical damage or alteration.  *Id.*

Mudpie contends that under California law "direct physical loss of or damage to" property does not require actual damage to the property but merely requires that the property no longer be suitable for its intended purpose.  In support, Mudpie cites *Hughes v. Potomac Insurance Co. of the District of Columbia*, 18 Cal. Rptr. 650 (Dist. Ct. App. 1962), *abrogated on other grounds by Sabella v. Wisler*, 377 P.2d 889 (Cal. 1963).  But *Hughes* cannot bear the weight Mudpie places on it.  First, *Hughes* did not purport to interpret a "direct physical loss" provision similar to the one at issue here.  *Hughes* concerned whether a home insurance policy's definition of "dwelling" included the ground underneath a home in addition to the structure itself.  *See id.* at 655.  Second, contrary to Mudpie's suggestion, *Hughes* did not imply that an insured need not show any physical change to the insured property to prove "direct physical loss."  To the contrary, the court in *Hughes* concluded that the home sustained "real and severe damage when the soil beneath it slid away and left it overhanging a 30-foot cliff" and deemed the home uninhabitable.  *Id.*[5]

---

[5] Both parties discuss an unpublished federal district court decision from the Central District of California: *Total Intermodal Services Inc. v. Travelers Property Casualty Co. of America*, No. CV 17-04908 AB (KSX), 2018 WL 3829767 (C.D. Cal. July 11, 2018).  Mudpie cites this case for the proposition that "direct physical loss" can include permanent dispossession of property.  Besides the fact that *Total* is an unpublished decision, this argument is not well taken because our task is to gauge how the California state courts would resolve the legal issue at hand and *Total* was a federal district court decision.  In any event, the result in *Total* is not

Unlike the cases that Mudpie relies upon, Mudpie's complaint does not identify a "distinct, demonstrable, physical alteration of the property," *see MRI Healthcare*, 115 Cal. Rptr. 3d at 37, and it does not allege that Mudpie was permanently dispossessed of its property.   Instead, Mudpie alleges the Stay at Home Orders temporarily prevented Mudpie from operating its store as it intended, and urges us to interpret "direct physical loss of or damage to" to be synonymous with "loss of use."   We cannot endorse Mudpie's interpretation because California courts have carefully distinguished "intangible," "incorporeal," and "economic" losses from "physical" ones. *Id.*; *see also Doyle v. Fireman's Fund Ins. Co.*, 229 Cal. Rptr. 3d 840, 843–44 (Ct. App. 2018) (concluding no physical damage was alleged where wine collection diminished in value after counterfeit wine was added, because no wine was physically lost); *Ward Gen. Ins. Servs., Inc. v. Emps. Fire Ins. Co.*, 7 Cal. Rptr. 3d 844, 851 (Ct. App. 2003) (concluding no physical damage was alleged where plaintiff sought to recover loss of electronically stored data, because there was "no loss of or damage to tangible property").

Interpreting the phrase "direct physical loss of or damage to" property as requiring physical alteration of property is consistent with other provisions of Mudpie's Policy. *Cf. Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 718 P.2d 920, 927 n.7 (Cal. 1986) ("[L]anguage in a contract must be construed in the context of that instrument as a whole . . . and cannot be found to be ambiguous in the abstract.").   For example, the Policy provides coverage for Business Income and Extra Expense only during the "period of restoration,"

---

inconsistent with *MRI Healthcare* and does not change the result we reach here.

and it defines the "period of restoration" as ending on "[t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or . . . [t]he date when business is resumed at a new permanent location."  That this coverage extends only until covered property is repaired, rebuilt, or replaced, or the business moves to a new permanent location suggests the Policy contemplates providing coverage only if there are physical alterations to the property.  To interpret the Policy to provide coverage absent physical damage would render the "period of restoration" clause superfluous.

Our conclusion that California courts would construe the phrase "physical loss of or damage to" as requiring an insured to allege physical alteration of its property is consistent with conclusions reached by other courts.  *See, e.g.*, *Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 179 (S.D.N.Y. 2020) (interpreting the phrase "direct physical loss of or damage to" in an insurance policy and observing that "nearly every court to address this issue has concluded that loss of use of a premises due to a governmental closure order does not trigger business income coverage premised on physical loss to property"); *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 504 F. Supp. 3d 1191, 1200 (D. Kan. 2020) ("[T]he overwhelming majority of cases to consider business income claims stemming from COVID-19 with similar policy language hold that 'direct physical loss or damage' to property requires some showing of actual or tangible harm to or intrusion on the property itself.").

The Eighth Circuit recently considered whether the COVID-19 pandemic and related government-imposed restrictions constitute "accidental physical loss or accidental physical damage" to business property in *Oral Surgeons, P.C.*

*v. Cincinnati Insurance Co.*, 2 F.4th 1141 (8th Cir. 2021). There, an oral and maxillofacial surgery practice ceased non-emergency services in March 2020 to comply with COVID-19 restrictions imposed by the Governor of Iowa. *Id.* at 1143. The restrictions were lifted and non-emergency surgeries resumed in May 2020. *Id.* Oral Surgeons filed a claim with its insurer for losses suffered during the suspension of non-emergency procedures. *Id.* The subject policy insured Oral Surgeons against lost business income and certain extra expense resulting from the suspension of operations "caused by direct loss to property." *Id.* (internal quotation marks omitted). The policy defined "loss" as "accidental physical loss or accidental physical damage," *id.*, but Oral Surgeons did not allege physical alteration to its property, *id.* at 1145.

Applying Iowa law, the Eighth Circuit interpreted the policy to require direct physical loss or physical damage, and concluded "there must be some physicality to the loss or damage of property—*e.g.*, a physical alteration, physical contamination, or physical destruction." *Id.* at 1144. The Eighth Circuit observed that the policy covered business income and incurred extra expense only during the "period of restoration" and reasoned that the fact "the policy provides coverage until property 'should be repaired, rebuilt or replaced' or until business resumes elsewhere assumes physical alteration of the property, not mere loss of use." *Id.*; *see also O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.*, 512 F. Supp. 3d 1019, 1023 (N.D. Cal. 2021) (relying on *MRI Healthcare* and holding that plaintiff's loss of use "unaccompanied by a distinct, demonstrable, physical alteration to the property" was insufficient to be compensable under its insurance policy). We affirm the district court's ruling that Mudpie's claimed losses are not covered by the Policy. The district court did not err by dismissing Mudpie's

claims for declaratory relief, breach of contract, and breach of the covenant of good faith and fair dealing.[6]

IV

We also conclude that the Policy's Virus Exclusion bars coverage for Mudpie's claimed losses.  The Policy specifies:

> [Travelers] will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

Having ruled that Mudpie did not allege a direct physical loss, the district court did not rely on the Virus Exclusion when it dismissed Mudpie's complaint.  Nevertheless, the parties fully briefed the applicability of the Virus Exclusion in the district court and we may affirm "on any basis the record supports, including one the district court did not reach." *Or. Short Line R.R. Co. v. Dep't of Revenue Or.*, 139 F.3d 1259, 1265 (9th Cir. 1998) (quoting *Herring v. FDIC*, 82 F.3d 282, 284 (9th Cir. 1995)).

Mudpie argues that its losses are not subject to the Policy's Virus Exclusion because the losses were caused by

---

[6] To survive the motion to dismiss Mudpie's claim for breach of the implied covenant of good faith and fair dealing, Mudpie was required to adequately plead two elements: (1) benefits under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause.  *See Love v. Fire Ins. Exch.*, 271 Cal. Rptr. 246, 255 (Ct. App. 1990).  Because Mudpie failed to plausibly allege that it was entitled to coverage under the Policy, it failed to adequately plead the first element of this claim.

Stay at Home Orders that restricted Mudpie's use of its property, not directly by the virus.  Travelers contends that this exclusion bars coverage for all of Mudpie's claimed losses because it was the virus that prompted state and local authorities to issue the Stay at Home Orders in the first place.

California courts broadly interpret the term "resulting from" in insurance contracts.  *Mosley v. Pac. Specialty Ins. Co.*, 263 Cal. Rptr. 3d 28, 35 (Ct. App. 2020) (explaining "[t]he term 'resulting from' 'broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship'") (citation omitted).  And "where there is a concurrence of different causes, the efficient cause—the one that sets others in motion—is the cause to which the loss is to be attributed, though the other causes may follow it, and operate more immediately in producing the disaster."  *Sabella v. Wisler*, 377 P.2d 889, 895 (Cal. 1963) (quoting 6 COUCH, INSURANCE § 1466 (1930)).

The California Supreme Court explained in *Garvey v. State Farm Fire & Casualty Co.*, 770 P.2d 704 (Cal. 1989), that *Sabella* "impliedly recognized that coverage would not exist if the covered risk was simply a *remote* cause of the loss, or if an excluded risk was the efficient proximate (meaning predominant) cause of the loss" and concluded "the fact that an excluded risk contributed to the loss would not preclude coverage if such a risk was a remote cause of the loss."  *Id.* at 707.  California courts apply the efficient proximate cause doctrine developed in *Sabella* and reaffirmed in *Garvey* because the doctrine "creates a workable rule of coverage that provides a fair result within the reasonable expectations of both the insured and the insurer."  *Julian v. Hartford Underwriters Ins. Co.*, 110 P.3d 903, 907 (Cal.

2005), *as modified* (May 5, 2005) (internal quotation marks omitted).

Mudpie's complaint does not allege an attenuated causal chain between the virus and Mudpie's losses. Nor does Mudpie dispute that the Stay at Home Orders that impacted Mudpie's business were issued in response to the COVID-19 pandemic, and the point is not debatable. The state authorities' March 19 Stay at Home Order explained that COVID-19 had "rapidly spread throughout California" and "a State of Emergency . . . exist[ed] in California as a result of the threat of COVID-19." Based on these findings, Californians were ordered to remain at home or at their place of residence except for purposes deemed essential. Though Mudpie argues it was the government orders that most directly caused its injury, Mudpie does not plausibly allege that "the efficient cause," i.e., the one that set others in motion, *Sabella*, 377 P.2d at 895, was anything other than the spread of the virus throughout California, or that the virus was merely a remote cause of its losses. *Cf. Garvey*, 770 P.2d at 707. Accordingly, the Policy's Virus Exclusion bars coverage for Mudpie's claims.

V

The judgment of the district court is **AFFIRMED**.[7]

---

[7] United Policyholders' motion to become amicus, Dkt. # 33, is **GRANTED**.