NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 15 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CIRCUS CIRCUS LV, LP,

 Plaintiff-Appellant,

 v.

AIG SPECIALTY INSURANCE
COMPANY,

 Defendant-Appellee.

No.   21-15367

D.C. No. 2:20-cv-01240-JAD-NJK

MEMORANDUM*

Appeal from the United States District Court
for the District of Nevada
Jennifer A. Dorsey, District Judge, Presiding

Argued and Submitted March 9, 2022
Phoenix, Arizona

Before:  HAWKINS, PAEZ, and WATFORD, Circuit Judges.

 Plaintiff Circus Circus, LV, LP ("Circus Circus"), a 2.8 million square-foot

casino in Las Vegas, Nevada, appeals the district court's order dismissing its

insurance coverage claims against AIG Specialty Insurance Company ("AIG").

We have jurisdiction under 28 U.S.C. § 1291.  We review de novo, *L.A. Lakers,*

*Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017), and we affirm.

---

 *        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Circus Circus seeks coverage under an "all risks" insurance policy (the "Policy") for economic losses it sustained during the COVID-19 pandemic. The Policy provides coverage against "all risks of direct physical loss or damage to [the] Insured Property [i.e., the entire casino complex] from a Covered Cause of Loss." The Policy defines the term "Covered Cause of Loss" as a "peril or other type of loss, not otherwise excluded under this policy."

At 12:01 a.m. on March 18, 2020, "Circus Circus closed its doors" as a result of "COVID-19 and [local Stay at Home] Orders." Among other matters, Circus Circus alleges that the "Stay at Home Orders have caused and are continuing to cause the necessary partial or total interruption of Circus Circus's business operations" and that the Orders and physical loss of its property "caused by those Orders has had a devastating effect on [its] business."

"On March 20, 2020, Circus Circus notified AIG that it had experienced . . . a covered loss as a consequence of the physical loss and damage caused by COVID-19 and the resulting Stay at Home Orders and other civil authority orders." AIG denied the claim, and this lawsuit ensued.

Because this lawsuit concerns a dispute over the interpretation of an insurance contract, the analysis is governed by Nevada law. If there are no Nevada Supreme Court decisions directly on point, the court "must predict how the highest state court would decide the issue using intermediate appellate court decisions,

2

decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001) (citation and internal quotation marks omitted). Where Nevada law is lacking, this court may "look[] to the law of other jurisdictions, particularly California, for guidance." *Eichacker v. Paul Revere Life Ins. Co*., 354 F.3d 1142, 1145 (9th Cir. 2004) (citation and internal quotation marks omitted).

1.     The district court correctly held that Circus Circus does not plausibly allege that it suffered direct physical damage to its property under the terms of the Policy. Despite Circus Circus's allegation that the COVID-19 virus was present on its premises, it has not identified any direct physical damage to its property caused by the virus which led to the casino's closure. Rather, the allegations surrounding Circus Circus's closure are based on the local Stay at Home Orders. *See Inns-by-the-Sea v. California Mut. Ins. Co*., 71 Cal. App. 5th 688, 699 (2021), review denied (Mar. 9, 2022). These very allegations were recently rejected by the California Court of Appeal in a factually similar lawsuit. *Id.* at 699-705. As Nevada courts often rely on California law for guidance, there is no reason to believe the Nevada Supreme Court would rule differently. *See Eichacker*, 354 F.3d at 1145.

2.     Circus Circus likewise fails to allege that it suffered a direct physical loss of its property under the Policy. Circus Circus's argument that the presence of the

virus rendered its property uninhabitable improperly "collapses coverage for 'direct physical loss' into 'loss of use' coverage." *Inns-by-the-Sea*, 71 Cal. App. 5th at 705. Indeed, this court in *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885 (9th Cir. 2021), rejected an insured's argument that "direct physical loss" of property merely requires that the property no longer be suitable for its intended purpose. *Id.* at 891. Rather, the loss must be due to a "distinct, demonstrable, physical alteration of the property." *Id*. (citation omitted).

The Policy's reference to the period of "interruption" further supports the logic that a loss of use requires a "distinct, demonstrable, physical alteration of the property." The Policy covers actual losses of income sustained by the insured during a "Period of Interruption" which begins at the time of the "direct physical loss or damage" and ends either when: (1) normal operations resume; or (2) when "physically damaged buildings and equipment could be repaired or replaced and made ready for operations under the same or equivalent physical and operating conditions that existed prior to such loss or damage," whichever is less. "The Policy's focus on repairing, rebuilding, or replacing property . . . is significant because it implies that the 'loss' or 'damage' that gives rise to Business Income coverage has a physical nature that can be physically fixed." *Inns-by-the-Sea*, 71 Cal. App. 5th at 707; *see also Mudpie*, 15 F.4th at 892. Here, although the "Period of Interruption" clause in the Policy is worded slightly different than the clauses in

4

the policies involved in the above-mentioned cases, the concepts are the same and the same conclusion follows.

Circus Circus also does not allege that it was permanently dispossessed of its property. *Mudpie, Inc.*, 15 F.4th at 892 (reasoning that Mudpie failed to allege a direct loss of its property because "Mudpie's complaint does not identify a 'distinct, demonstrable, physical alteration of the property,' . . . and it does not allege that Mudpie was permanently dispossessed of its property.").[1]

**AFFIRMED.**

---

[1] In light of our disposition, we deny Circus Circus's request that we certify two questions to the Nevada Supreme Court as unnecessary.