Filed 4/21/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MUSSO & FRANK GRILL CO., INC.,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>MITSUI SUMITOMO INSURANCE USA INC.,<br><br>        Defendant and Respondent. | B310499<br><br>(Los Angeles County Super. Ct. No. 20STCV16681) |

---

APPEAL from a judgment of the Superior Court of Los Angeles County, Monica Bachner, Judge. Affirmed.

Shernoff Bidart Echeverria, Michael J. Bidart, Ricardo Echeverria, Steven M. Schuetze, Danica Crittenden; The Ehrlich Law Firm, Jeffrey I. Ehrlich and Reid M. Ehrlich-Quinn for Plaintiff and Appellant.

Hinshaw & Culbertson, Kent R. Keller; Riker Danzig Scherer Hyland & Perretti, Brian E. O'Donnell, Maura C. Smith, Jeffrey M. Beyer, and Cara C. Vecchione for Defendant and Respondent.

---

Musso & Frank Grill Co., Inc., an iconic Hollywood restaurant, had a business interruption insurance policy issued by Mitsui Sumitomo Insurance USA, Inc. (MSI). Due to COVID-19 and notices from the Governor, the Mayor of Los Angeles, and several public health agencies, Musso & Frank was ordered to close its restaurant in March 2020, resulting in the loss of all its business. Musso & Frank filed a claim with MSI, which was denied on the grounds that the policy covered only "direct physical loss of or damage to" the property, and expressly excluded coverage for losses resulting from a government order and losses caused by or resulting from a virus. When Musso & Frank sued MSI, MSI's demurrer was sustained without leave to amend. Musso & Frank appeals. We affirm.

## FACTS

Musso & Frank's MSI policy was effective from June 30, 2019 to June 30, 2020. Under the heading "Coverage," the policy promised to pay for "the actual loss of Business Income [Musso & Frank] sustain[ed] due to the necessary 'suspension' of [its] 'operations' during the 'period of restoration.' The 'suspension' [had to] be caused by *direct physical loss of or damage to property at [the covered] premises. . . . The loss or damage must be caused by or result from a Covered Cause of Loss.*" (Italics added.)

Under the heading "Exclusion of Loss Due to Virus or Bacteria," the policy included two relevant exclusions, one for losses arising from governmental action, the other for losses sustained by reason of a virus or bacteria. The exclusion for "Governmental Action" is defined as the "Seizure or destruction of property by order of governmental authority." The virus exclusion provided: "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other micro-organism that includes or is capable of inducing physical distress, illness or disease."

2

On March 15, 2020, in response to the COVID-19 pandemic, the Mayor of the City of Los Angeles issued an order mandating that all the city's restaurants and retail food facilities close by midnight that day, the only exception being take-out food (picked up or delivered). A few days later, the mayor issued an order requiring residents to remain in their homes except for "essential activities or infrastructure," and prohibiting public and private gatherings. Because Musso & Frank never offered food for pick up or delivery, the closure orders forced it to shut down completely.

On March 19, 2020, Musso & Frank submitted a property loss notice to MSI. On April 1, 2020, Jeff Kinkead of MSI wrote to Musso & Frank, rejecting its claim because it had not suffered a "direct physical loss of or damage to property," and because of the virus and government action exclusions.

On May 1, 2020, Musso & Frank sued MSI for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligence. MSI responded by way of demurrer, asserting that, as a matter of law, there was no coverage because there was no property loss or damage and that, in addition, the virus and government action exclusions barred coverage. Over Musso & Frank's opposition, the demurrer was sustained without leave to amend and a judgment of dismissal was entered. Musso & Frank appeals.

## LEGAL DISCUSSION

### A.    Standard of review.

The parties agree that on appeal from an order sustaining a demurrer without leave to amend, we assume the truth of all properly pleaded and reasonably implied allegations. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081; *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 459.)

3

Because a demurrer tests the legal sufficiency of a pleading, our review is de novo. (*Moreno v. Sanchez* (2003) 106 Cal.App.4th 1415, 1423.)

### B. Musso & Frank contends "direct physical loss of or damage" to the property is subject to a reasonable construction that supports coverage.

Musso & Frank concedes that, as the policyholder, it has the burden to prove its claim falls within the scope of the policy's insuring clause (*Aydin Corp. v. First State Ins. Co.* (1998) 18 Cal.4th 1183, 1188), but insists that, because MSI sought dismissal by way of demurrer, it has the burden to establish conclusively that the insuring clause unambiguously negates the construction claimed by Musso & Frank. (*Palacin v. Allstate Ins. Co.* (2004) 119 Cal.App.4th 855, 862.) To that end, Musso & Frank insists the coverage provision must be interpreted broadly to afford the insured the greatest possible protection. (*Energy Ins. Mutual Limited v. Ace American Ins. Co.* (2017) 14 Cal.App.5th 281, 291.) Without regard to which party has the burden, our result would be the same — Musso & Frank's loss is not covered.

The question is whether the insuring clause's requirement of "direct physical loss of or damage to [the insured] property" can reasonably be construed to cover the closure resulting from the pandemic. Musso & Frank contends that, under California law, the interpretation of an undefined policy term requires a three-step analysis — (i) an examination of the "plain meaning" of the term in the context of the policy as a whole, (ii) consideration of the "objectively reasonable expectations of the insured," and (iii) the resolution of any ambiguities or uncertainties against the insurer. (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821-822 (*AIU*); *Windsor Food Quality Co., Ltd. v. Underwriters of Lloyds of London* (2015) 234 Cal.App.4th 1178, 1185; and see Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2021) § 4:5.)

4

1. ***Musso & Frank contends that because "physical loss" and "damage" are used disjunctively, "loss of" and "damage" must be given separate definitions.***

According to Musso & Frank, it suffered a "loss of" its property within the meaning of the insuring clause. (*In re Tobacco Cases I* (2010) 186 Cal.App.4th 42, 49 [courts must give effect to every word of a contract and, when possible, avoid an interpretation that renders a word surplusage]; see also *Farmers Ins. Exchange v. Knopp* (1996) 50 Cal.App.4th 1415, 1421.) We disagree with Musso & Frank's application of that rule to the MSI policy.[1]

The first published case to address this issue in the context of the COVID-19 pandemic vis-a-vis a business interruption policy was *Oral Surgeons, P.C. v. Cincinnati Insurance Co.* (8th Cir. 2021) 2 F.4th 1141 (*Oral Surgeons*). Although the Eighth Circuit case is based on Iowa law, not California law, its facts and analysis of the issue are strikingly similar to the facts of this case and to the law of California as outlined by Musso & Frank.

Oral Surgeons, P.C. stopped performing non-emergency dental procedures in March 2020, after the Governor of Iowa declared a state of emergency and imposed restrictions on dental practices because of the COVID-19 pandemic. (*Oral Surgeons, supra*, 2 F.4th at p. 1143.) Oral Surgeons had a business interruption policy issued by The Cincinnati Insurance Company (Cincinnati) and submitted a claim for its losses.

---

[1] *Farmers Ins. Exchange v. Knopp, supra,* 50 Cal.App.4th at page 1419, relied on by Musso & Frank, involved the construction of an exclusionary clause in a policy covering an automobile. As will appear, there are now several cases considering business interruption policies and their application to closures caused by the pandemic (including one California case and a Ninth Circuit case based on California law), and those cases are more relevant.

The Cincinnati policy covered losses sustained due to the suspension of operations " 'caused by direct "loss" to property,' " and defined " 'loss' " as " 'accidental physical loss or accidental physical damage' " to the insured property. (*Ibid.*) Based on the absence of loss or physical damage, Cincinnati denied coverage. Oral Surgeons sued but its case was dismissed, and the Eighth Circuit affirmed. (*Ibid.*)

Although Oral Surgeons insisted there was coverage, the Eighth Circuit rejected its claim that the policy's "disjunctive definition of 'loss' as 'physical loss' or 'physical damage' creat[ed] an ambiguity that [had to] be construed against Cincinnati." (*Oral Surgeons*, *supra*, 2 F.4th at p. 1143.) To give the terms separate meanings, Oral Surgeons suggested defining physical loss to include " 'lost operations or inability to use the business,' " and to define physical damage as a physical alteration of the property. (*Ibid.*) The Eighth Circuit disagreed, noting that it was required to construe the policy to give effect to the parties' intent, and noting that ambiguity exists only when the policy language is subject to two reasonable interpretations. Generally speaking, the plain meaning of the insurance contract prevails. (*Ibid.*)

In *Oral Surgeons*, as here, the policy required direct " 'physical loss' " or " 'physical damage' " to trigger the business interruption policy. (*Oral Surgeons*, *supra*, 2 F.4th at p. 1144.) "Accordingly, there must be some physicality to the loss or damage of property — *e.g.*, a physical alteration, physical contamination, or physical destruction." (*Ibid*.; and see *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.* (7th Cir. 2021) 20 F.4th 327; *Terry Black's Barbecue, L.L.C. v. State Automobile Mutual Insurance Company* (5th Cir. 2022) 22 F.4th 450.)

In *Mudpie, Inc. v. Travelers Casualty Ins. Co.* (9th Cir. 2021) 15 F.4th 885 (*Mudpie*), the Ninth Circuit, applying California law, agreed with the Eighth Circuit. In *Mudpie,* a store in the business of selling children's clothing was forced to close under orders from Governor Gavin Newsom and local public health officials. Mudpie sought coverage

from Travelers, its insurer, but that request was denied based on the policy's exclusion for losses sustained by reason of a Governmental Order rather than a direct physical loss or damage to property. (*Id.* at pp. 887-888.) Mudpie then filed a putative class action, alleging claims for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing. The district court granted Traveler's motion to dismiss and Mudpie appealed. (*Id.* at pp. 888-889.)

The Ninth Circuit affirmed on the basis of California law, explaining that Travelers had insured for the loss of business income during a suspension of operations "during the 'period of restoration' " — and that the " 'suspension' [had to] be caused by direct physical loss of or damage to property." (*Mudpie, supra*, 15 F.4th at pp. 889-890.)

*Mudpie* explained that, under California law, the burden is on the insured to establish that a claimed loss is within the basic scope of coverage. Once the insured makes that showing, the burden is on the insurer to prove the claim is specifically excluded. "Where, as here, a policy covers 'direct physical loss of or damage to' property, the 'direct physical loss requirement is part of the policy's insuring clause and accordingly falls within [the insured's] burden of proof.' " (*Mudpie, supra*, 15 F.4th at p. 890, citing *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.* (2010) 187 Cal.App.4th 766, 778-780.) *Mudpie* explains that California's courts compel an interpretation of an insurance policy "according to the 'clear and explicit' meaning of the terms . . . used in their ordinary and popular sense.' " (*Id.* at p. 890; and see *AIU, supra*, 51 Cal.3d at pp. 843-844.)

California addressed the issue in 2021, in *Inns-by-the-Sea v. California Mutual Ins. Co.* (2021) 71 Cal.App.5th 688 (review denied, Mar. 9, 2022, S272450), where the Fourth District reached the same result as *Oral Surgeons* and *Mudpie*. *Inns-by-the-Sea* holds, without equivocation, that a policy requiring physical loss or damage does not cover losses incurred by reason of the pandemic. (*Inns-by-the-Sea, supra*,

7

at pp. 700-701.)  *Mudpie* and *Oral Surgeons* are cited (*Inns-by-the-Sea*, *supra*, at pp. 692, fn. 1, 712) but neither is discussed.  (See also *Sanzo Enterprises, LLC v. Erie Insurance Exchange* (Ohio Ct. App. 2021) 182 N.E.3d 393.)

At this point, there is no real dispute.  Under California law, a business interruption policy that covers physical loss and damages does not provide coverage for losses incurred by reason of the COVID-19 pandemic.

> **2.      *The fact that loss and damage requirements are sometimes found in exclusionary provisions does not change the plain meaning of those words.***

Musso & Frank insists that the ordinary definitions of damage and loss include anything depriving the owner of the property or its use, and that "loss" includes an undesirable outcome of a risk.  The cases tell us otherwise.

The insuring clause of the policy before us expressly required direct physical loss of or damage to property.  In *Mudpie,* the language in the exclusionary clause, excluding coverage for losses due to government action, included the language of our insuring clause (*Mudpie, supra,* 15 F.4th at p. 893), a difference without a distinction.  The plain meaning of "physical loss of or damage to property" is the same wherever it appears in a policy, the only difference being which party has to prove its unambiguous meaning.  (And see *Sutter's Place, Inc. v. Zurich American Insurance Company* (N.D.Cal. Mar. 14, 2022) ___ F.4th ___ [2022 WL 767280].)

Musso & Frank's reliance on *Seifert v. IMT Insurance Company* (D.Minn. 2021) 542 F.Supp.3d 874 is misplaced.  Applying Minnesota law, that court construed a policy requiring loss "of property" the same as a policy covering only loss "to property."  (*Id.* at p 878.)  Although the

terms are not completely analogous, the court concluded the same reasoning applied to both. (*Id.* at p. 881.) For reasons that are not altogether clear, the court nevertheless looked to Seifert's complaint, specifically his allegation that he could not fully use the property, and accepted his claim that he suffered a loss in value of his property. The court found that Seifert had "plausibly allege[d] direct physical losses of his property." (*Id.* at p. 880.)

Although *Seifert* arguably supports Musso & Frank's distinction between loss and damage to property, that case is based on Minnesota law — and California's cases have concluded to the contrary. *Henderson Road Res. Systs. v. Zurich American Ins.* (N.D.Ohio 2021) 513 F.Supp.3d 808, is distinguishable for the same reason — it is based on Ohio law, not California law. California law is clear. Physical loss and damage must have material existence. (*Inns-by-the-Sea v. California Mutual Ins. Co.*, *supra*, 71 Cal.App.5th at pp. 692, 699-700.)

Under California law, Musso & Frank could not have had an objectively reasonable expectation of coverage.[2]

> ### C. Even assuming Musso & Frank could bring itself within the insuring clause, the virus exclusion would bar coverage.

---

[2] An amicus curiae brief filed on behalf of the American Property Casualty Insurance Association reminds us that insurers calculate and pool the risks of covered damage to property. To suddenly add non-physical losses caused by a pandemic would give policyholders more than they bargained for and dramatically affect the insurers' financial obligations. Indeed, the National Association of Insurance Commissioners has explained that business interruption policies were not designed or priced to cover losses from a pandemic. Nationwide losses from COVID-19 have been estimated at between $255 billion and $431 billion *per month*.

Musso & Frank's opening brief does not discuss the exclusions, and its reply brief addresses only the virus exclusion, notwithstanding the trial court's finding that, assuming coverage, the virus exclusion would apply. The virus exclusion expressly bars coverage for all loss or damage caused by or resulting from "any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease." Musso & Frank's allegation that its losses were caused by the public health orders does not change the fact that those orders were a response to the COVID-19 virus. (*Sabella v. Wisler* (1963) 59 Cal.2d 21, 31-32.) The Ninth Circuit agrees, observing that the complaint in that case did not allege an attenuated causal chain between the virus and the insured's losses, and the insured did not dispute the fact that the closure orders were due to COVID-19. (*Mudpie, supra*, 15 F.4th at pp. 893-894; and see *Boxed Foods Company, LLC v. Cal. Capital Ins. Co.* (N.D.Cal. 2020) 497 F.Supp.3d 516, 521-522.)

**D.    Conclusion**.

It is worth noting that, at the time of the trial court's order and at the time Musso & Frank filed its opening brief, none of the COVID-19 business interruption cases discussed in this opinion had been filed (even *Inns-by-the-Sea*, filed in November 2021, post-dated the trial court's order and the opening brief in this case). We commend the trial court's prescience in reaching the same result as virtually all of the cases that have addressed this issue. Musso & Frank did not suffer any physical alteration of its property, and its closure was not based on any physical loss or damage. Additionally, the virus exclusion clearly applied.

Because Musso & Frank cannot establish a breach of contract, it follows necessarily that it cannot prove a breach of the covenant of good faith and fair dealing. Insofar as its complaint alleges a claim for negligence, Musso & Frank's briefs do not mention that claim, leaving us to conclude that it has been abandoned.

## DISPOSITION

The judgment is affirmed.  The parties are to bear their own costs of appeal.

CERTIFIED FOR PUBLICATION

$\hspace{8cm}$ VOGEL, J.*

We concur:


ROTHSCHILD, P. J.


CHANEY, J.

---

\* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.