**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

PAUL OSHESKE, individually and on behalf of all others similarly situated,

*Plaintiff - Appellant*,

v.

SILVER CINEMAS ACQUISITION COMPANY, doing business as Landmark Theaters,

*Defendant - Appellee*.

No. 23-3882

D.C. No.
2:22-cv-09463-HDV-JC

OPINION

Appeal from the United States District Court
for the Central District of California
Hernan Diego Vera, District Judge, Presiding

Argued and Submitted October 7, 2024
San Francisco, California

March 27, 2025

Before: M. Margaret McKeown, Lucy H. Koh, and
Anthony D. Johnstone, Circuit Judges.

Opinion by Judge McKeown

**SUMMARY**[*]

**Video Privacy Protection Act**

Affirming the district court's dismissal, for failure to state a claim, of an action against Silver Cinemas Acquisition Co., doing business as Landmark Theaters, the panel held that the Video Privacy Protection Act does not apply to the business of providing a classic in-theater movie-going experience.

When plaintiff Paul Osheske bought a movie ticket on Landmark's website, Landmark shared the name of the film, the location of the showing, and Osheske's unique Facebook identification number with Facebook.

The VPPA imposes liability on any "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." The term "video tape service provider" is defined in the statute as "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." The panel held that, under a straightforward construction of the statutory text, buttressed by the statutory history, selling tickets to and providing an in-theater movie experience does not constitute a business subject to the VPPA.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Sophia M. Rios (argued), Berger Montague PC, La Mesa, California; Matthew I. Summers and Joshua P. Davis, Berger Montague PC, San Francisco, California; for Plaintiff-Appellant.

Bonnie K. DelGobbo (argued) and Joel C. Griswold, Baker & Hostetler LLP, Chicago, Illinois; Teresa C. Chow, Baker & Hostetler LLP, Los Angeles, California; Richard B. Raile and Benjamin D. Janacek, Baker & Hostetler LLP, Washington, D.C.; for Defendant-Appellee.

**OPINION**

McKEOWN, Circuit Judge:

Moving pictures, or movies, have been around for more than a century, and developing technologies have transformed where and how people can watch them—from the silver screen, to the home television set, to today's mobile devices. In this appeal, we consider the scope of a decades-old law protecting viewers' privacy, by asking whether the business of providing a classic in-theater movie-going experience is subject to the Video Privacy Protection Act ("VPPA") of 1988. We agree with the district court that it does not.

**FACTUAL BACKGROUND**

Paul Osheske is a Facebook user and a movie watcher. Silver Cinemas Acquisition Co., known as Landmark Theatres ("Landmark"), operates movie theaters across the United States and manages a website where people can

watch trailers for upcoming films, browse showtimes, and purchase movie tickets. Landmark installed on its website a Facebook "pixel," or "web beacon," programmed to contact Facebook and transmit user information whenever someone purchased a ticket while logged into their Facebook account. After Osheske visited Landmark's website and bought a movie ticket, Landmark shared the name of the film, the location of the showing, and his unique Facebook identification number with Facebook via the pixel. Osheske never consented to this disclosure, but his account's Off-Facebook Activity Report shows that his information was sent to Facebook when Landmark's website confirmed his purchase of the movie ticket.

Osheske filed a putative class action complaint against Landmark on behalf of himself and all Facebook users in the United States whose ticket purchases had been disclosed via Landmark's website. Landmark moved to dismiss in March 2023, arguing: (1) that it was not a "video tape service provider" within reach of the VPPA; (2) that it had not knowingly disclosed Osheske's "personally identifiable information"; and (3) that the Act was unconstitutional either facially or as applied to a movie theater's sharing of information related to a public viewing at a public theater. The district court granted the motion and dismissed Osheske's complaint without leave to amend, reasoning that the movie theater's activities did not qualify as a "rental, sale, or delivery" of "audio visual materials" under the VPPA's definition of "video tape service provider."

## ANALYSIS

### I.  Video Privacy Protection Act

The dispositive question is whether Landmark, in selling tickets to in-person film screenings, was "engaged in [a] business" within reach of the Video Privacy Protection Act.

The original impetus for the VPPA arose during President Ronald Reagan's contested nomination of Judge Robert Bork to the Supreme Court, when the *Washington City Paper* published a profile of Judge Bork based on a leaked list of 146 films that he and his family had rented from a local video store. S. Rep. No. 100-599, at 5 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342. That newspaper profile, "The Bork Tapes," was roundly criticized by members of the Senate Judiciary Committee holding hearings on Judge Bork's nomination. *Id.* at 5–6. In direct response, the VPPA imposed liability on any "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider[.]" 18 U.S.C. § 2710(b)(1). Nearly forty years later, we consider for the first time whether selling tickets to and providing an in-theater movie experience constitutes a business subject to the VPPA.

The key term, "video tape service provider," is defined in the statute as "any person, engaged in the business . . . *of rental, sale, or delivery* of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4) (emphasis added). Osheske argues that Landmark must be subject to the statute in part because the movie theater chain has itself used the verb "deliver" to advertise its "reputation for *delivering* the best in specialty, traditional and independent film" (emphasis added). Landmark counters that the plain language, structure, and historical context of

the VPPA place movie theaters outside the scope of the Act. The district court agreed with Landmark. We review de novo the decision to grant a motion to dismiss for failure to state a claim. *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021).

We hold under a straightforward construction of the statutory text that Landmark's conduct does not make it a "video tape service provider" under the VPPA. The meaning of each word in "rental, sale, or delivery" is cabined by the fact that the sequence enumerates different transactions "of prerecorded video cassette tapes or similar audio visual materials." Following that grammatical logic, "rental" and "sale" clearly refer to the temporary and permanent exchange of video products, according to standard definitions in authoritative dictionaries.[1] These readings, in turn, help us to narrow and sort through the wider-ranging definitions of "deliver,"[2] since the *noscitur a sociis* canon of construction instructs that we "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words[.]" *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 575 (1995). We thus read "delivery," consistent

---

[1] *See, e.g.*, *Rental*, Oxford English Dictionary, https://www.oed.com/dictionary/rental_n (last visited Feb. 15, 2025) (defining "rental" as "[t]he fact or process of renting or hiring out property"); *Sale*, Oxford English Dictionary, https://www.oed.com/dictionary/sale_n2 (last visited Feb. 15, 2025) (defining "sale" as "an act of selling or making over to another for a price; the exchange of a commodity for money or other valuable consideration").

[2] *See Delivery*, Oxford English Dictionary, https://www.oed.com/dictionary/delivery_n (last visited Feb. 15, 2025) (including definitions like "[t]he formal or legal handing of goods over to another" and "[t]he actual or notional handing over of a deed").

with "rental" and "sale," to signify the transfer or conveyance of a good—*i.e.*, "prerecorded video cassette tapes or similar audio visual materials."

Osheske's argument that Landmark engages in the "delivery . . . of audio visual materials" by transmitting light and sound to patrons is unavailing. Taken together, the phrase "rental, sale, or delivery" characterizes the exchange of a video product.[3] It does not encompass the provision of shared access to film screenings. Landmark does not deliver any "audio visual materials" to the customer in either its ticket sales or its in-theater experiences. As Landmark's counsel laid out, "theater patrons do not obtain the control over audiovisual materials available to prerecorded video viewers. Someone late to a theater showing cannot rewind the movie, someone needing to use the facilities or desiring a soft drink cannot pause it, and someone falling asleep cannot stop it and start it again later." Simply put, there has not been a transaction involving an exchange of video materials that qualifies as a "rental, sale, or delivery."

To the extent that the statutory language leaves any room for ambiguity, we note that our interpretation also conforms with the historical context surrounding the VPPA. Outraged as legislators were about the disclosure of Judge Bork's

---

[3] Other decisions by our court have left open the possibility that the temporary or permanent exchange of digital "audio visual materials" might be subject to the VPPA. *See, e.g.*, *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066–67 (9th Cir. 2015) (affirming dismissal of VPPA claim because the defendant streaming service only made the alleged disclosures to the consumer); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984–86 (9th Cir. 2017) (affirming dismissal of VPPA claim because defendant streaming service did not share "personally identifiable information" under the Act). We need not decide that issue because it is not presented here.

video rental history, their remarks about privacy and intellectual freedom were limited to the "home," the "living room," and other contexts in which people might expect "quiet[] and reflection." S. Rep. No. 100-599, at 5–7. Though the market for theatrical releases was in full swing in the late 1980s, movie theaters were omitted from the Act and accompanying report, perhaps because they are publicly accessible sites of shared synchronous viewing. The plain language of the statute, buttressed by the privacy concerns animating the VPPA, confirms that Landmark was not engaged in business subject to the Act.

## II.  Denial of Leave to Amend

Osheske did not request leave to amend from the district court, so we need not consider that argument on appeal. But in the end it doesn't matter. The district court's dismissal without leave to amend was proper because "it is clear, on *de novo* review, that the complaint could not be saved by any amendment." *Parents for Priv. v. Barr*, 949 F.3d 1210, 1221 (9th Cir. 2020), *cert. denied*, 141 S.Ct. 894 (2020).

## CONCLUSION

We were recently reminded that going to the movies provides "a communal experience you don't get at home." J. Kim Murphy, "Sean Baker Says Movie Theaters Are 'Under Threat' While Accepting Oscar for Best Director: 'Keep Making Films for the Big Screen. I Know I Will'," *Variety*, March 2, 2025, https://variety.com/2025/film/news/sean-baker-best-director-oscar-anora-1236323071/. It is also something legally distinct from the "rental, sale, or delivery" of "audio visual materials" within the meaning of the VPPA. We affirm the district court.

## AFFIRMED.