Filed 10/19/23 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ENDEAVOR OPERATING COMPANY, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>HDI GLOBAL INSURANCE COMPANY et al.,<br><br>    Defendants and Respondents. | B323865<br><br>(Los Angeles County Super. Ct. No. 21STCV23693)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN THE JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on September 21, 2023, be modified as follows:

1. On page 2, line 3 of the first full paragraph, insert the word "specific" before the word "global" and insert the phrase

"had yet to occur and hence" before the phrase "was most assuredly" so the full sentence reads:

> This appeal involves a poorly drafted commercial property insurance policy, and whether the parties intended that policy to cover economic losses stemming from a specific global pandemic that had yet to occur and hence was most assuredly outside the parties' contemplation when they drafted the policy.

2. On page 4, immediately after the heading entitled "***The insurance policy***" add as footnote 1 the following footnote, which will require renumbering of all subsequent footnotes:

> 1    In its petition for rehearing, Endeavor accuses the court of misleadingly omitting language from the policy provisions cited below.  We have reviewed its accusations, and conclude that the omitted language in no way affects our analysis.

3. On page 21, line 7, insert the phrase "any outbreak of" before the phrase "the COVID-19 pandemic."

4. On page 21, line 9, immediately after the sentence ending with "no direct physical loss or damage to property" add as footnote 11 the following footnote, which will require renumbering of all subsequent footnotes:

**11** In its petition for rehearing, Endeavor takes issue with our decision to address its "event" argument as part of our examination of whether Endeavor needs to establish any "physical loss or damage." Specifically, Endeavor claims that this analytical approach "improperly" "refashions" its argument. We are unpersuaded. Appellate courts are not obligated to organize opinions to track the parties' briefs, particularly when the court has a more efficient and logical way to do so. More to the point, Endeavor's "event" argument would—if valid—obviate the need to show any "physical loss or damage," which is precisely why we view it as a subset of the broader issue of whether the policy requires "physical loss or damage" as a prerequisite to coverage.

5. On page 22, at the end of the paragraph ending with "(*Id.* at p. 662, italics added.)" add the following sentence and footnote as footnote 13, which will require renumbering of all subsequent footnotes:

> In its petition for rehearing, Endeavor argues that the "loss or damage" need not be a "*physical* loss or damage" (such that a *monetary* loss will suffice), but this argument ignores our analysis—set forth above—that the policy covers monetary losses only if they are predicated on "physical loss or damage."[13]

13     Endeavor also lodges an overarching objection to our reliance on the policy's definition of "occurrence" because the *parties* did not rely on that definition in their briefing; Endeavor urges that we should have sought supplemental briefing regarding that term, and that our failure to do so entitles it to the grant of rehearing.  Endeavor is wrong.  Supplemental briefing—either before or after an opinion is rendered—is required only when a court addresses "an *issue* which was not proposed or briefed by any party to the proceeding."  (Gov. Code, § 68081, italics added.)  The *issue* before us is whether the policy requires a showing of "physical loss or damage," and that issue calls upon us to engage in a de novo review of the terms of the policy.  Endeavor cites no authority for the proposition that a court—on pain of rehearing—must seek supplemental briefing from the parties merely because it develops a rationale, cites a contract provision, or cites a case pertinent to the issue the parties have briefed.  The parties' failure to fully analyze an issue they squarely presented is not a basis for rehearing.

6.  On page 24, line 13 of the first full paragraph, immediately after the sentence ending with "the trial court sustained the insurers' demurrer" add as footnote 15 the following footnote, which will require renumbering of all subsequent footnotes:

4

In its petition for rehearing, Endeavor argues that it articulated its "event" theory earlier. We disagree. Although the operative complaint cites the language in the policy regarding an "event" and Endeavor's opposition to the demurrer sprinkled in the word "event" a handful of times, neither filing actually articulated the "event" *theory* Endeavor espouses on appeal. Endeavor's reference to its "triple trigger" coverage at the initial demurrer hearing still does not constitute development of the "event" *theory* it advances on appeal.

7.  On page 29, line 9 of footnote 13 (which subsequently will be renumbered footnote 17), delete the word "equating" and replace it with the phrase "declining to equate."

\*     \*     \*

There is no change in the judgment.

Appellant's petition for rehearing is denied.

_____

LUI, P. J.         CHAVEZ, J.         HOFFSTADT, J.

5

Filed 9/21/23 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| ENDEAVOR OPERATING COMPANY, LLC, | B323865 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV23693) |
| v. | |
| HDI GLOBAL INSURANCE COMPANY et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Elaine Lu, Judge. Affirmed.

Latham & Watkins, Kirsten C. Jackson, Robert J. Gilbert, David A. Barrett, Roman Martinez, Eric J. Konopka, Alexander G. Siemers; The Law Offices of Dorn G. Bishop and Dorn G. Bishop for Plaintiff and Appellant.

Zelle, Thomas J. D'Antonio, Kristin C. Cummings; Greines, Martin, Stein & Richland, Laurie J. Hepler and Stefan C. Love for Defendant and Respondent HDI Global Insurance Company.

Clyde & Co, Susan Koehler Sullivan, Douglas J. Collodel and Gretchen S. Carner for Defendant and Respondent ACE Insurance Company.

Clyde & Co and Kathryn C. Ashton for Defendant and Respondent Interstate Fire & Casualty Company.

Dentons, Julia M. Beckley, Erin E. Bradham and Douglas Janicik for Defendant and Respondent AIG Specialty Insurance Company.

\* \* \* \* \* \*

This appeal involves a poorly drafted commercial property insurance policy, and whether the parties intended that policy to cover economic losses stemming from a global pandemic that was most assuredly outside the parties' contemplation when they drafted the policy. This appeal squarely presents two questions.

First, can the policy holder in this case—an entertainment conglomerate that operates sports and other entertainment ventures at venues around the globe—recover the economic losses it suffered when the COVID-19 pandemic shut down many of those venues without first establishing that there was "direct physical loss or damage to property"? This question is one on which the Courts of Appeal have split, and is pending before our Supreme Court in *John's Grill, Inc. v. The Hartford Financial*

2

*Services Group, Inc.* (2022) 86 Cal.App.5th 1195 (*John's Grill*), review granted Mar. 29, 2023, S278481, and *Another Planet Entertainment, LLC v. Vigilant Ins. Co.* (9th Cir. 2022) 56 F.4th 730, request for certification granted Mar. 1, 2023, S277893. Until that Court provides guidance, we side with the vast majority of cases holding that direct physical loss or damage to property, rather than mere loss of the property's use, is a prerequisite for coverage. We further hold that two of the clauses in the policy here—namely, extension clauses dealing with orders by civil authorities and with impediments to access—do not, by their addition of the word "event," eliminate the requirement of direct physical loss or damage to property.

Second, has "direct physical loss or damage to property" been sufficiently pled where, as here, the policy holder alleges that the virus that causes COVID-19 has either been deposited onto or "adsorbed" to the surface of the policy holder's property? The Courts of Appeal have split on this question as well, and that question is pending before our Supreme Court in *Shusha, Inc. v. Century-National Ins. Co.* (2022) 87 Cal.App.5th 250 (*Shusha*), review granted Apr. 19, 2023, S278614. Until that Court provides guidance, we side with those cases holding that the ephemeral existence of COVID-19 or its predecessor virus on property does not constitute "direct physical loss or damage to property" as a matter of law.

As a result, we affirm the trial court's judgment dismissing the policy holder's complaint on demurrer.

3

## FACTS AND PROCEDURAL BACKGROUND

I. **Facts**

A. ***The insured***

Endeavor Operating Company, LLC (Endeavor) is a "holding company" that owns "various subsidiaries in the entertainment, sports, and fashion business sectors." Its subsidiary entities include, among others, (1) IMG Events, "which hosts sporting and cultural events at rented venues worldwide"; (2) IMG Media, "which produces and distributes sports programming and sells media rights and sponsorships"; (3) William Morris Endeavor Entertainment, LLC, which is a "talent agency . . . that represents artists, musicians, models, performers, and content creators"; and (4) IMG Academy, which is a "sports education academy." Endeavor's portfolio of events includes the Wimbledon tennis tournament, New York Fashion Week, and Ultimate Fighting Championship matches, and its clients include Nobel laureates as well as the National Football League.

B. ***The insurance policy***

HDI Global Insurance Company (HDI) issued Endeavor a commercial property insurance policy that was effective from December 31, 2018 through December 31, 2019 (the policy). Although HDI issued an extension to that policy that lasted until January 31, 2020, and HDI, along with three other insurance companies[1] (collectively, the insurers) issued a new policy effective January 31, 2020 but not provided in writing until late March 2020, the parties on appeal have effectively stipulated

---

[1] Those other insurance companies are ACE American Insurance Company, AIG Specialty Insurance Company, and Interstate Fire & Casualty Company.

4

that the *terms* of the original, HDI-issued policy are controlling here.[2] Those terms provide coverage that, at times, is up to $175 million per occurrence.

### 1. *Main coverage provision*

Consistent with its title as a "GlobalProperty Insurance Policy" and with the bulk of Endeavor's $665,149.78 annual premium being allocated to "Commercial Property Coverage," the policy identifies the "Loss or Damage Insured" as "all risk of *direct physical loss or damage to property . . . .*" (Italics added.) Alas, the policy nowhere defines "direct physical loss or damage."

### 2. *Types of covered losses*

The policy also defines the various "interest[s] of the Insured" that it covers. As pertinent to this appeal, the policy covers two types of losses. First, the policy covers losses suffered to "[a]ll real and personal property" "owned, used, or intended for use by" Endeavor (the property repair clause). Second, the policy covers any resulting business interruption losses—which encompass (1) loss of gross earnings "due to the necessary interruption of business conducted by" Endeavor; and (2) loss of gross profits "resulting from interruption of or interference with [Endeavor's] business"—but only if they "result[] from loss or

---

**2** The reason for this effective stipulation is to neutralize Endeavor's allegations of a "possib[ility]" that the insurers surreptitiously altered the terms of the new policy after the COVID-19 outbreak but before the insurers provided Endeavor with the written version of that policy in late March 2020. We are able to accept this stipulation because we are affirming the dismissal of Endeavor's case on demurrer; had we reversed that judgment, the parties would have been obligated to litigate on remand which of the various policies applies.

damage" "to real and/or personal property" insured under the policy (collectively, the business interruption clauses).[3]

### 3. *Extensions*

The policy then sets forth three "Extensions of Coverage." Two of those are pertinent to this appeal. First, the policy "extend[s]" coverage "to insure loss sustained during the period of time when, as a result of *loss, damage or an event* not excluded [by one of the policy's enumerated exclusions,] access to property is impaired by order or action of civil or military authority" (the civil authority clause). (Italics added.) Second, the policy "extend[s]" coverage "to insure loss sustained during the period of time when, as a result of *loss, damage or an event* not excluded [by one of the policy's enumerated exclusions], ingress to or egress from real or personal property is impaired" (the ingress/egress clause). (Italics added.) In its "Limits of Liability" section, the policy adds two further prerequisites "for coverage to apply" under the civil authority and ingress/egress clauses—namely, that (1) there be an "[i]nsured physical loss or damage" to *some* property, and (2) this physical loss or damage to some property "occur within [1 or 10] statute mile[s] from [Endeavor's

---

**3** Although not addressed on appeal, Endeavor's complaint also alleged losses for "Extra Expense" incurred "in order to continue as nearly as practicable the normal operation of" its "business," for "Loss of Rental Income and/or Loss of Rental Value," and for "Loss of Royalties, Fees and Commissions which would have been earned." Each of these types of covered losses are also explicitly predicated upon "loss or damage" "to real and/or personal property" insured under the policy. Endeavor's complaint further alleged losses for "expediting expenses" and "claims preparation costs," but neither type of loss is the focus of this appeal.

6

premises."[4]  The "Limits of Liability" section caps coverage under the civil authority and ingress/egress clauses to $25 million "per occurrence," and the policy elsewhere defines "occurrence" as a "[l]oss, or a series of losses or several losses, which are attributable directly or indirectly to one cause or disaster or to one series of similar causes or disasters *arising from a single event*."  (Italics added.)

4.    *Period of recovery*

The policy also defines "[t]he length of time for which loss may be claimed" under the business interruption, civil authority, and ingress/egress clauses (the period of recovery clause).  This period of recovery *starts* with "the date of such loss or damage" (even if the policy has already expired); the period *ends* at the expiration of the (1) "time . . . required," "with the exercise of due diligence and dispatch[,] to rebuild, repair, or replace the property that has been destroyed or damaged," *plus* (2) the "time" required to "restore [Endeavor's] business to the condition that would have existed had no loss occurred," which is gauged in part by whether Endeavor "has resumed [its] normal operations"—but in any event no longer than 365 days.

5.    *Contamination/pollution exclusion*

The policy also enumerates several exclusions from coverage.  Relevant to this appeal is the contamination/pollution exclusion, which excludes a loss that would otherwise be covered

_____

4    Verbatim, the policy states that the "[i]nsured physical loss or damage must occur within *one (10)* statute mile from the Insured's premises in order for coverage to apply."  (Italics added.)  It is therefore unclear from the plain language of the policy whether the parties intended the distance requirement to be 1 mile *or* 10 miles.

7

if the "loss or damage" was "caused by, resulting from, or contributed to or made worse by actual" or "threatened release, discharge, . . . or dispersal of contaminants or pollutants." (Capitalization omitted.)  The term "contaminants or pollutants" is defined in the exclusion to encompass, among other things, a "virus."

### C.    *The COVID-19 pandemic*

In late 2019 or early 2020, the SARS-CoV-2 virus—which causes COVID-19—was first identified in Wuhan, China.  The virus can spread by direct contact between humans, through particles in the air, and by contact between a person and a surface on which the virus has landed.  When viral particles make contact with a surface, they are either "deposited" onto the surface (that is, they form "merely a physical presence" that "is readily reversable"), or they are "adsorbed" to the surface (that is, they form a "weak" "noncovalent chemical bond" that "is relatively hard to detach").  While viral particles "left undisturbed" can persist in some form on some surfaces for up to 28 days, both deposited and adsorbed particles can both be inactivated and/or removed with a simple cleaning of the surface.

When COVID-19 outbreaks surged across the world, "stadiums and concert venues closed, games and performances were cancelled, and fans were prevented from attending in-person events," causing Endeavor's operations to "all but gr[ind] to a halt."  Endeavor suffered "substantial losses" estimated at "hundreds of millions of dollars" when its "revenues" from ticket sales, media distribution and sponsorship rights, and representation fees all "plummeted."

**D.** *The insurers deny coverage*

Endeavor submitted claims to the insurers for its COVID-19-related economic losses. HDI denied coverage under the policy, which expired before HDI sustained its alleged losses, and the insurers otherwise responded that the new policy, effective January 31, 2020, "'does not appear [to] provide[] coverage for the claimed loss.'"

## II. Procedural Background

### A. *Complaint*

On June 24, 2021, Endeavor sued the insurers for (1) declaratory relief, and (2) breach of contract. Its complaint alleges two theories for coverage. First, Endeavor alleges that it suffered damage or loss to real property "as a result of direct exposure" to the SARS-CoV-2 virus at "facilities" it "owned, leased, and/or used" because "bonding" of the virus to surfaces at those facilities caused "adverse physical alteration of property."[5] Second, Endeavor alleges that it suffered damage or loss to real property even where the virus was "neither actually present nor suspected" because the "threat" and "danger" of locations becoming "disease vector[s] for COVID-19" triggered government shut-down orders that impaired access to Endeavor's properties, and precipitated economic loss. Endeavor nowhere identifies any specific property that was damaged. Instead, the gravamen of Endeavor's claims for coverage appear to be for recovery of its business losses, regardless of the averred theory.

### B. *Demurrer*

The insurers demurred to the complaint. Following further briefing and a hearing, the trial court issued its initial order

---

[5] Endeavor also alleges damage based on the virus's presence in the *air* but has wisely abandoned that notion.

sustaining the demurrer without leave to amend.**6**  The court reasoned that Endeavor had sufficiently alleged direct physical loss or damage to insured property, but that its claims were "clearly and unambiguously barred by" the policy's contamination/pollution exclusion.

Three weeks later, the trial court issued an order granting its own motion to reconsider its ruling in light of two new appellate court decisions holding that the presence or potential presence of the virus does *not* constitute direct physical loss or damage.  The parties submitted further briefing on that issue, and Endeavor filed a motion for new trial in which, for the first time, it expressly urged that its chief theory of liability is that the word "event" in the civil authority and ingress/egress clauses eliminated the requirement of any direct physical loss or damage to property.

Following a consolidated hearing, the trial court issued an August 2, 2022 ruling (1) sustaining the demurrer without leave to amend, and (2) denying Endeavor's motion for new trial.  The court modified its initial ruling to find that the "actual" or "threatened presence" of COVID-19 or the SARS-CoV-2 virus "does not constitute a physical loss or damage required to trigger coverage for property insurance coverage," but reaffirmed its initial ruling that the contamination/pollution exclusion applied, which in the court's view obviated its need to address the argument Endeavor raised for the first time in its new trial motion.

Following the entry of judgment for the insurers, Endeavor filed this timely appeal.

---

**6**      Endeavor also filed a motion to strike the insurers' demurrer, which the trial court denied as procedurally improper.

10

## DISCUSSION

Endeavor appeals the trial court's ruling sustaining the insurers' demurrer without leave to amend.

In assessing whether the trial court erred in this ruling, we ask two questions: "(1) Was the demurrer properly sustained; and (2) Was leave to amend properly denied?" (*Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1134 (*Shaeffer*).) In answering the first question, we ask ""whether the complaint states facts sufficient to constitute a cause of action.""" (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010; *California Dept. of Tax & Fee Administration v. Superior Court* (2020) 48 Cal.App.5th 922, 929 (*Tax & Fee Administration*); see generally Code Civ. Proc., § 430.10, subd. (e).) In undertaking this inquiry, we accept as true "all material facts properly pled" in the operative complaint (*Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 152; *Tax & Fee Administration*, at p. 929) as well as those facts appearing in the exhibits attached to it and matters properly subject to judicial notice,[7] giving ""precedence"" to the facts in the exhibits and judicially noticed matters if they ""contradict the allegations"" (*Gray v. Dignity Health* (2021) 70 Cal.App.5th 225, 236, fn. 10; *Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 767). In answering the second question, we ask ""whether ""there is a reasonable possibility that the defect [in the operative complaint] can be cured by amendment.""""" (*Shaeffer*, at p. 1134; *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100.) We review the trial court's ruling regarding the first question de novo, and review its ruling

---

[7] Here, the trial court took judicial notice of the pertinent policies.

11

regarding the second for an abuse of discretion. (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; *People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777; *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242.)

Because Endeavor has made no effort to explain *how* it can amend its complaint to state a cause of action (and we perceive none), the correctness of the trial court's ruling turns entirely on whether Endeavor's causes of action for declaratory relief and breach of contract are precluded as a matter of law. (*Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 210.) Whether those causes of action are precluded as a matter of law turns on three questions: (1) Does the policy in this case require that there be a "direct physical loss or damage to property"? If so, (2) can Endeavor adequately plead such a "direct physical loss or damage to property" by citing the risk of spread of COVID-19 or alleging that the SARS-CoV-2 virus has been deposited on or adsorbed to the surfaces of the venues Endeavor uses? And, if so, (3) does the policy's exclusion for contamination/pollution otherwise foreclose coverage as a matter of law?

## I.    Does the Policy Require "Direct Physical Loss or Damage to Property"?

This question is one of contract interpretation. Although insurance policies are a type of contract, such that the overarching goal when interpreting them is ""'to give effect to the parties' mutual intentions'"" (*Montrose Chemical Corp. of California v. Superior Court* (2020) 9 Cal.5th 215, 230 (*Montrose*); *Minkler v. Safeco Ins. Co. of America* (2010) 49 Cal.4th 315, 321 (*Minkler*)), California courts follow a three-step process when interpreting insurance policies more specifically. First, courts must follow the language set forth in the insurance policy if it is

12

"'"clear and explicit."'" (*Minkler*, at p. 321.) Second, and if the text is not definitive, courts must examine whether the policy is "'ambiguous'"—that is, whether it is "'susceptible of more than one reasonable interpretation'" in light of the "'"objectively reasonable expectations of the insured."'" (*Ibid.*) Ambiguity is not adjudged "in the abstract, or in isolation"; instead, "[t]he policy must be examined as a whole, and in context, to determine whether an ambiguity exists." (*Id.* at p. 322; *Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 916, fn. 7.) If the language is unambiguous, courts must read the policy to accord with the sole reasonable interpretation. (*Minkler*, at p. 321.) But if the language is ambiguous, the third step employs a default presumption that any ambiguity is construed in favor of the policy holder—in other words, that the "tie" goes to the policy holder. (*Ibid.*; *Montrose*, at p. 230.) Because we are in as good a position as the trial court to read an insurance policy, our review of this contract interpretation question is de novo. (*Yahoo Inc. v. National Union Fire Ins. Co. etc.* (2022) 14 Cal.5th 58, 67.)

## A. *Analysis*

Because Endeavor's claim against the policy is primarily to recover business interruption losses under the business interruption clauses (rather than to repair damaged property under the property repair clause), Endeavor's entitlement to recover its financial losses turns on whether direct physical loss or damage to property is a prerequisite to coverage under the business interruption clauses.

We independently conclude that the insurance policy, when viewed as a whole, unambiguously requires "direct physical loss or damage to property" before Endeavor may recover under the business interruption clauses. (Civ. Code, § 1641 ["The whole of a

13

contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other"]; *Inns-by-the-Sea v. California Mutual Ins. Co.* (2021) 71 Cal.App.5th 688, 707-708 (*Inns-by-the-Sea*) ["our task is to interpret the Policy using *the whole* of its language"].)  We reach this conclusion for three mutually reinforcing reasons.

First, the business interruption clauses are, by their plain language, predicated on some type of loss or personal property damage.  The "loss of gross earnings" clause requires that the loss "result[] from loss or damage insured herein . . . to real and/or property described in" the property repair clause.  Along the same lines, the "loss of gross profits" clause also requires that the loss be "caused by loss or damage to real or personal property as described in" the property repair clause.

Second, the period of recovery clause provides that business interruption losses may be recovered *starting* with the date of that loss and, critically, *ending* at the time it would reasonably take to "rebuild, repair, or replace the property that has been destroyed or damaged" plus any "additional length of time to restore [Endeavor's] business to the condition that would have existed had no loss occurred."  Keying the endpoint for recovery of business interruption losses to the time to repair property loss or damage necessarily contemplates such loss or damage must first occur.  (Accord, *United Talent Agency v. Vigilant Ins. Co.* (2022) 77 Cal.App.5th 821, 833-834 (*United Talent*) [inferring property damage/loss requirement from restoration clause keyed to repair of property]; *Inns-by-the-Sea, supra*, 71 Cal.App.5th at pp. 694-695 [same]; *Starlight Cinemas, Inc. v. Massachusetts Bay Ins. Co.* (2023) 91 Cal.App.5th 24, 40 (*Starlight*) [same]; *Mudpie, Inc. v.*

14

*Travelers Casualty Ins. Co. of Am.* (9th Cir. 2021) 15 F.4th 885, 892 (*Mudpie*) [same].)

Third and lastly, Endeavor's policy is a commercial *property* insurance policy. As its very name implies, a property insurance policy at its core contemplates coverage for loss or damage to *property*. (*Simon Marketing, Inc. v. Gulf Ins. Co.* (2007) 149 Cal.App.4th 616, 622-623 (*Simon Marketing*) ["The self-evident point is that property insurance is insurance of *property*. . . . Given this premise, the threshold requirement for recovery under a contract of property insurance is that the insured property has sustained physical loss or damage"]; *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.* (2010) 187 Cal.App.4th 766, 778 (*MRI Healthcare*) ["Coverage under property insurance is "'triggered' by some threshold concept of injury to the insured property'"].)

But do the civil authority and ingress/egress clauses create ambiguity as to whether property loss or damage is a prerequisite to coverage? They do not. As set forth above, those clauses "extend[]" the policy's business interruption coverage "to insure loss sustained during the period of time when, as a result of loss, damage or an event," either (1) "access to property is impaired by order or action of civil . . . authority," or (2) "ingress to or egress from real or personal property is impaired." Admittedly, these clauses—in the abstract—might be read to do away with the property loss or damage prerequisite, but they *cannot* be read that way within the context of the policy as a whole. That is because the policy as a whole in this case elsewhere limits recovery under these clauses to $25 million "per occurrence," and goes on to require that an "[i]nsured physical loss or damage . . .

15

occur" within a specified distance[8] "from the Insured's premises in order for coverage to apply." Reading all of these provisions together, the civil authority and ingress/egress clauses extend the policy's coverage by allowing coverage for business interruption losses in instances not only where *Endeavor's property* suffers loss or damage, but also when *someone else's property within the specified distance* suffers loss or damage—as long as (1) a civil authority blocks access to Endeavor's property, *or* (2) ingress or egress to Endeavor's property is otherwise "impaired." Similar clauses are typically read to extend coverage to loss sustained by a policy holder due to loss or damage to *someone else's property*— but not to do away with the property loss or damage requirement entirely. (E.g., *Dickie Brennan & Co. v. Lexington Ins. Co.* (5th Cir. 2011) 636 F.3d 683, 685 [civil authority clause requires property loss or damage to adjacent property]; *United Air Lines v. Ins. Co. of State of Pa.* (2d Cir. 2006) 439 F.3d 128, 131 [same].) This reading of the civil authority and ingress/egress clauses also dovetails neatly with the period-of-recovery clause in the policy in this case. By defining the outer time limit for recovery of the losses covered by the civil authority and ingress/egress clauses as the time to "rebuild, repair or replace the property that has been destroyed or damaged" *and* the "additional" time needed to restore Endeavor's business "to the condition that would have existed had no loss occurred," the civil authority and ingress/egress clauses entitle Endeavor to coverage for losses up to the point at which *someone else's property* is repaired *and* after that until such time as Endeavor has "resumed normal

---

8      As noted above, the policy is internally inconsistent on whether the distance is 1 "statute mile" or 10 "statute miles." This conflict is immaterial to our analysis.

16

operations" after those operations were harmed by the ensuing lack of access to Endeavor's own property—with an outside cap of 365 days.

### B. *Endeavor's arguments*

Endeavor resists our conclusion that the policy in this case requires some property loss or damage with what boils down to three arguments.

#### 1. Coast Restaurant *decision*

Endeavor asserts that a civil authority clause (and, by analogy, an ingress/egress clause) in a property insurance policy extends coverage to situations in which there is no damage or loss to *any* property, as long as the policy holder experiences a loss of use of its own property. For support, Endeavor cites *Coast Restaurant Group, Inc. v. Amguard Ins. Co.* (2023) 90 Cal.App.5th 332 (*Coast Restaurant*). Although *Coast Restaurant* did hold that "'direct physical loss'" means the loss of use of property without any need to also show "physical[] damage[] or alter[ation]" (*id.* at p. 339), that is the minority view. Every other California decision has rejected that view and instead held that "'direct physical loss or damage'" requires "physical alteration" of the property, such that mere loss of the property's use will generally not suffice—except when the policy explicitly includes loss of use due to a virus as qualifying for coverage. (*Starlight*, *supra*, 91 Cal.App.5th at p. 38; *United Talent*, *supra*, 77 Cal.App.5th at pp. 830-831, 834; *Inns-by-the-Sea*, *supra*, 71 Cal.App.5th at pp. 699-700, 705-706; *Musso & Frank Grill Co., Inc. v. Mitsui Sumitomo Ins. USA Inc.* (2022) 77 Cal.App.5th 753, 760; *Santa Ynez Band of Chumash Mission Indians v. Lexington Ins. Co.* (2023) 90 Cal.App.5th 1064, 1069 (*Santa Ynez*), review granted July 12, 2023, S280353; *Apple Annie, LLC v. Oregon*

17

*Mutual Ins. Co.* (2022) 82 Cal.App.5th 919, 934-935 (*Apple Annie*); see generally, *Simon Marketing*, *supra*, 149 Cal.App.4th at p. 623 [directly physical loss or damage requires "'a distinct, demonstrable, physical alteration of the property'"]; cf. *John's Grill*, *supra*, 86 Cal.App.5th at pp. 1201-1203, 1213 [policy with "customized trigger-of-coverage language that is virus-specific" reaches "forms of property 'loss' that do not involve physical alteration of property"]; *Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Ins. Co.* (2022) 81 Cal.App.5th 96, 112 (*Marina Pacific*) [policy with "communicable disease coverage" that "explicitly contemplates that a . . . virus[] can cause damage or destruction to property and that such damage constitutes direct physical loss or damage"]; *Amy's Kitchen, Inc. v. Fireman's Fund Ins. Co.* (2022) 83 Cal.App.5th 1062, 1065, 1068-1071 [same].)

*Coast Restaurant* departed from the majority view based chiefly on its view that *American Alternative Insurance Corp. v. Superior Court* (2006) 135 Cal.App.4th 1239 (*American Alternative*) stands for the proposition that "loss of use" of property is covered by a standard property insurance policy. (*Coast Restaurant*, *supra*, 90 Cal.App.5th at pp. 340-341.) We respectfully disagree with *Coast Restaurant*'s reading of *American Alternative*. *American Alternative* held that a property insurance policy that protected against "loss" of property provided coverage against a government seizure of an insured private airplane. (*American Alternative*, at pp. 1242-1243, 1246-1249.) *American Alternative*'s conclusion in large part rested on the fact that the policy holder there purchased an endorsement to the policy that eliminated the usual *exclusion* for governmental seizure or confiscation (thereby strongly suggesting that such seizures remained covered by that policy); we consequently do not

18

read *American Alternative* as standing for the broader proposition that "loss of use" more expansively constitutes direct property loss or damage, particularly in cases—like this one—where the policy owner was never completely dispossessed of its property. We are also not alone in rejecting *Coast Restaurant*'s generous reading of *American Alternative.* (Accord, *Starlight, supra,* 91 Cal.App.5th at pp. 38-39.)

Endeavor proposes two reasons why we should swim against the current and side with *Coast Restaurant* rather than the majority view.

First, it argues that *Coast Restaurant* is better reasoned because it is consistent with two other California cases—namely, *American Alternative* and *Hughes v. Potomac Ins. Co.* (1962) 199 Cal.App.2d 239 (*Hughes*), disapproved on another ground by *Sabella v. Wisler* (1963) 59 Cal.2d 21, 34. We disagree. As we have explained above, we do not read *American Alternative* as support for the proposition that an insurance policy that covers property loss or damage thereby includes, without more, loss of the use of property. We also do not read *Hughes* as standing for that proposition. *Hughes* held that a policy that insured "all physical loss" to a "dwelling" covered the risk to a house when the earth beneath it had washed away in a storm, even though the house had yet to be damaged. (*Hughes*, at p. 248.) Although *Hughes* acknowledged that the house could not be used while in this state, *Hughes*'s rationale rested on ambiguity about whether the term "dwelling" meant to denote only the structure or instead the structure *and* the ground beneath it; *Hughes* subsequently concluded that the policy would be illusory if not read to cover the ground as well as the structure. (*Ibid.*) *Hughes* did not purport to apply to policies *not* employing an ambiguous definition of

19

"dwelling" or to erect a ubiquitous "loss of use equals property loss or damage" rule.  We are not alone in declining to let *Hughes* so far off the leash of its facts or rationale.  (Accord, *United Talent, supra*, 72 Cal.App.5th at p. 833; *Mudpie, supra*, 15 F.4th at p. 891.)

Second, Endeavor argues that the majority view is poorly reasoned because its holding that some distinct, demonstrable, physical alteration of property is required comes from a treatise (specifically, 10A Couch on Insurance (3d ed. 2016) § 148:46 (the treatise)) that Endeavor says is analytically flawed and otherwise inaccurately summarizes the law.  Whether or not Endeavor's attack on the treatise might have had some persuasive force the first time the treatise was presented to a court, it is not persuasive at this point in time—that is, after a near unanimity of courts has adopted the treatise's rule as California law.  Endeavor's attack is akin to a modern-day assault on Galileo's paper espousing that the earth orbits the sun; that horse left the barn a long time ago.  (Accord, *Apple Annie, supra*, 82 Cal.App.5th at p. 935 ["At this point in time, any analytical flaws in the [treatise's] formulation have become largely academic in light of the now-existing wall of precedent . . . "]; *Starlight, supra*, 91 Cal.App.5th at pp. 39-40 [same].)

2. *Inclusion of the word "event"*

Endeavor next makes a three-part argument that the inclusion of the word "event" in the civil authority and ingress/egress clauses effectively eliminates the direct physical loss or damage requirement for coverage under those clauses.  Specifically, Endeavor argues that (1) those clauses "extend[]" the policy "to insure loss sustained during the period of time when, as a result of loss, damage *or an event* not excluded [by any of the

20

policy's enumerated exclusions]," either "access to property is impaired by order or action of civil . . . authority" or "ingress to or egress from real or personal property is impaired" (italics added); (2) the clauses' use of the term of "event" as a distinct alternative to "loss" or "damage" means that the insured loss need not be preceded by any "loss" or "damage"; and (3) an "event" includes the COVID-19 pandemic,[9] such that any losses stemming from a civil authority order or denial of access are covered even if there is no direct physical loss or damage to property.

We reject this argument for three reasons.

First, although the policy does not define "event," it *does* define "occurrence"—and in a way that inexorably links an "event" to a "loss" otherwise covered by the policy (such that there cannot be an "event" without an accompanying "loss" or "damage" to property). In pertinent part, an "occurrence" is defined as a "[l]oss, or a series of losses or several losses, which are attributable directly or indirectly to one cause or disaster or to one series of similar causes or disasters *arising from a single event*."[10] (Italics added.) This linkage makes sense: An event is

---

**9** Elsewhere, Endeavor argues that an "event" happened every time a civil authority issued a new order. This argument is inconsistent with Endeavor's chief argument as well as with the definition of "occurrence" that looks to losses traced back to a "single event," and illustrates the convenient malleability—and hence inherent unreasonableness—of Endeavor's construction of the civil authority and ingress/egress clauses.

**10** The only other place "event" is mentioned in the policy is the "Limits of Liability" cap of $15 million "per Occurrence *for Events* owned, controlled, sponsored or managed by the Named Insured Coverage (Property Damage/Time Element Combined)." (Italics added.) In this context, "event" refers to the

21

what *causes* the loss or damage. (Accord, *MRI Healthcare*, *supra*, 187 Cal.App.4th at p. 779 ["The word 'direct' used in conjunction with the word 'physical' indicates the change in the insured property must occur *by the action of the fortuitous event triggering coverage*," italics added].) Endeavor urges a broader definition of "event" unmoored from any property loss or damage, and in support cites *United Pacific Ins. Co. v. McGuire Co.* (1991) 229 Cal.App.3d 1560 (*United Pacific*) and *London Market Insurers v. Superior Court* (2007) 146 Cal.App.4th 648 (*London Market*). But these cases are unhelpful: *United Pacific* merely held that an "'event'" reaches beyond "'accident[s]'" (*United Pacific*, at p. 1565), and *London Market* held that an "event" did not include the continuous manufacture of a product as the parties did not intend "'event' to mean "'anything that happens'"'" (*London Market*, at p. 662). Indeed, *London Market* linked an event to a "single *injury-causing* episode"—precisely the type of linkage the policy here requires. (*Id.* at p. 662, italics added.)

Second, and more fundamentally, Endeavor's reading is inconsistent with the parties' mutual intent repeatedly expressed elsewhere throughout the policy. To be sure, Endeavor is correct to note that treating "event" as being what precipitates a "loss" or "damage" effectively robs the word "event" of any independent meaning within the phrase "loss, damage *or an event*" in the two clauses at issue. And courts are undoubtedly reluctant to construe any words in a policy as surplusage. (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 827; *London Market*, *supra*,

entertainment or sporting event, not a root cause of coverage. The policy's use of the same word to express different meanings further weakens Endeavor's position that the parties intended "event" to have a specific meaning.

22

146 Cal.App.4th at pp. 669-670 [collecting cases].) But reading the inclusion of the word "event" to eliminate any predicate showing of direct physical loss or damage to property altogether would effectively rob several other provisions applicable to the civil authority and ingress/egress clauses of any meaning—most specifically, (1) the provisions specifying that there be an "[i]nsured physical loss or damage" within a specified distance of Endeavor's premises for the civil authority or ingress/egress provisions to apply; (2) the period of recovery clause that expressly applies to the civil authority and ingress/egress provisions and ties the end point of recovery to the rebuilding, repair or replacement of property as well as resumption of business; and (3) the definition of "occurrence" linking an event to loss. Given the policy's repeated cross-references between these specific clauses requiring property loss or damage as a prerequisite to coverage under the civil authority and ingress/egress clauses, we conclude that Endeavor's contrary interpretation that reads the words "or an event" in isolation is unreasonable and hence does not render the policy ambiguous.[11] (Accord, *Minkler*, *supra*, 49 Cal.4th at p. 322 [clauses should not be read in isolation].) At oral argument, Endeavor argued that the requirement in the "Limits of Liability" section that an "[i]nsured physical loss or damage" occur to *someone else's* property only applies when the coverage under the civil authority and ingress/egress clauses is triggered by a "loss" or "damage"— but not when coverage is triggered by an "event." We reject this

___

11      The tension between Endeavor's reading and our reading is nevertheless why we have characterized this policy as "poorly drafted"; we have found no way to read the policy in a way that perfectly harmonizes all of its language.

23

reading. By its plain language, this "Limits of Liability" section *as a whole* applies whenever the civil authority or ingress/egress clauses *as a whole* provide coverage. There is no basis in the policy's language for splicing the "Limits of Liability" section—that is, for applying the $25 million cap to "events," but not applying that section's requirement of an "[i]nsured physical loss or damage" within a specific distance of the insured's premises. And we decline to read the "Limits of Liability" section as not applying *at all* when an "event" (rather than "loss" or "damage") triggers the civil liability or ingress/egress clauses because that would mean the insurers have *infinite* liability for coverage triggered by an "event"; such a reading is absurd.

Third, Endeavor did not plead this event-based theory in its complaint or otherwise seek declaratory relief as to the meaning of that term. Instead, the complaint repeatedly alleges that Endeavor is entitled to coverage because its business losses stemming from civil authority orders and ingress/egress impairment are predicated upon damage or loss to Endeavor's property. Although Endeavor is permitted on demurrer to articulate new theories for recovery even on appeal (Code Civ. Proc., § 472c, subd. (a)), Endeavor has not articulated how its complaint can be amended to allege any extrinsic evidence supporting its reading of the policy. Endeavor first expressly emphasized this "event" theory in its motion for new trial after the trial court sustained the insurers' demurrer. Its failure to do so initially suggests that this theory was not within its contemplation at the time the policy was drafted and executed.

Endeavor makes two further arguments in support of its position.

Endeavor urges that the civil authority and ingress/egress clauses "extend[]" the business interruption clauses, and hence must do away with any predicate property loss or damage requirement. But our reading of the civil authority and ingress/egress clauses *does* extend the policy's coverage: Because of those clauses, the policy extends its business interruption coverage (1) *geographically*, by entitling Endeavor to coverage not only when its own property suffers direct physical loss or damage but when someone else's property does, if that other property is within a specific distance of Endeavor's premises; and (2) *temporally*, by entitling Endeavor to business interruption losses based on loss or damage to someone else's property until such time as Endeavor's business "has resumed normal operations." Contrary to what Endeavor suggests, the fact that the civil authority and ingress/egress clauses extend the policy's coverage does not mean that they must necessarily extend it as far as Endeavor can imagine; they only extend coverage as far as the policy language permits.

Next, Endeavor characterizes the civil authority and ingress/egress clauses—and the policy as a whole—as granting Endeavor "best-in-class protection" and "broad all-risk coverage," and by conferring "triple trigger" coverage. These self-serving labels are nothing but advocacy, as the phrases have no meaning tied to the policy itself. Indeed, Endeavor appears to have lifted the "triple trigger" phrase from another context, where it refers to which of many insurance companies may be sued for asbestos-related injury. (See *Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.* (1996) 45 Cal.App.4th 1, 42.) We accordingly give these characterizations no weight whatsoever.

25

### 3.    *Absence of a virus exclusion*

Endeavor lastly argues that the absence of a virus *exclusion* in the policy means that losses stemming from shutdowns occasioned by a virus must be *included*, notwithstanding the language of the policy.  This argument has been previously rejected on the ground that "it improperly attempts to rely on the absence of an exclusion to create an ambiguity in an otherwise unambiguous" policy.  (*Inns-by-the-Sea*, *supra*, 71 Cal.App.5th at p. 709.)  We could not say it better.

## II.    **Endeavor Failed as a Matter of Law to Plead "Direct Physical Loss or Damage to Property"**

Having concluded that the policy requires that there be a "direct physical loss or damage to property" (either Endeavor's or a third party's within a specified distance of Endeavor's premises), we must now ask whether Endeavor has—or can—adequately plead that requisite "direct physical loss or damage to property" by alleging that SARS-CoV-2 viral particles were deposited onto or adsorbed to the surfaces of its (unspecified) properties.  We conclude that the answer is, as a matter of law, "no."

The California courts are in accord that the phrase "direct physical loss or damage to property" means a "'distinct, demonstrable, physical alteration'" of the insured property. (*Simon Marketing*, *supra*, 149 Cal.App.4th at p. 623; *MRI Healthcare*, *supra*, 187 Cal.App.4th at pp. 778-779; *Starlight*, *supra*, 91 Cal.App.5th at p. 33; *Santa Ynez*, *supra*, 90 Cal.App.5th at p. 1069; *Best Rest Motel, Inc. v. Sequoia Ins. Co.* (2023) 88 Cal.App.5th 696, 703; see generally, *John's Grill*, *supra*, 86

26

Cal.App.5th at pp. 1209-1210 [summarizing cases].)[12]  This is the default definition to be applied where a policy does not provide a different definition of "direct physical loss or damage."  The policy here provides no different definition, and Endeavor does not allege the existence of any extrinsic evidence supporting a mutual intent to deviate from the default definition.

However, the courts are split on whether the presence of the SARS-CoV-2 virus on insured property satisfies the default definition.  One line of cases holds, as a matter of law, that this definition is not met by the ephemeral presence of the virus on the surface of property.  (*United Talent*, *supra*, 77 Cal.App.5th at pp. 834, 838.)  A competing line of cases holds that the definition *can* be met on demurrer because a policy holder can *allege* that the ephemeral presence of the virus on the surface of property constitutes a "physical alteration" of that property and because we are obligated to accept that allegation as true, no matter how "improbable" it is.  (*Marina Pacific*, *supra*, 81 Cal.App.5th at pp. 104-105, 108-112; *Shusha*, *supra*, 87 Cal.App.5th at pp. 262-263.)

We agree with the first line of cases, and do so for two reasons.

First, we agree with *United Talent* that the ephemeral presence of a virus on the surface of property does not "alter" or "'cause a physical change in the condition of the property'" because "'it may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days'" or weeks.  (*United Talent*, supra, 77 Cal.App.5th at pp. 834, 835, quoting *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.* (7th Cir.

---

12    For this reason, we again reject Endeavor's continued attack on the correctness of the Couch treatise underlying this default definition.

27

2021) 20 F.4th 327, 335; accord, *Inns-by-the-Sea*, *supra*, 71 Cal.App.5th at p. 703, fn. 17 [collecting cases holding that "'contamination [of property] which is short-lived or does not prevent the use of the structure does not qualify as direct physical loss'"].) If, as some courts adopting this definition have held, dust and debris from nearby road construction that lands on the surface of insured property does not satisfy this definition because it is easily cleaned, neither does the SARS-CoV-2 virus, which is similarly easy to clean according to Endeavor's own allegations in the complaint. (Accord, *Mama Jo's, Inc. v. Sparta Ins. Co.* (11th Cir. 2020) 823 Fed.Appx. 868, 879.) This is why the presence of SARS-CoV-2 is *unlike* the presence of other substances—such as unpleasant odors, dangerous chemical contamination, or asbestos—that permeate the property and require substantial effort to remove. (*United Talent*, at p. 834; *Western Fire Ins. Co. v. First Presbyterian Church* (Colo. 1968) 437 P.2d 52, 55-56 [gasoline saturating walls and floors of building, causing strong odors and increased flammability; direct physical loss or damage]; *Mellin v. N. Security Ins. Co.* (N.H. 2015) 115 A.3d 799, 803-804 [pervasive odor of cat urine that is difficult to remove; direct physical loss or damage]; *Essex Ins. Co. v. BloomSouth Flooring Corp.* (1st Cir. 2009) 562 F.3d 399, 401, 404-406 [same, as to "locker room" smell]; *Farmers Ins. Co. v. Trutanich* (Or.Ct.App. 1993) 858 P.2d 1332, 1335 [same, as to odor from a methamphetamine operation]; *Yale Univ. v. CIGNA Ins. Co.* (D.Conn. 2002) 224 F.Supp.2d 402, 412-414 [asbestos and lead contamination necessitating removal; direct physical loss or damage]; *Port Auth. v. Affiliated FM Ins. Co.* (3d Cir. 2002) 311

F.3d 226, 235-236 [no pervasive contamination by asbestos necessitating removal; no direct physical loss or damage].)[13]

Second, we respectfully disagree with *Marina Pacific* and *Shusha* that the general principle requiring *factual* allegations to be accepted as true at the demurrer stage obligates us to ignore that those allegations do not, as a matter of law, meet the applicable definition triggering coverage. We agree with *Marina Pacific* and *Shusha* that, at the demurrer stage, we must accept as a scientific fact how the SARS-CoV-2 virus interacts with surfaces. (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 156.) However, the trial court's judgment for the insurers is nevertheless correct here because we are concluding that the type of viral interaction with surfaces alleged by Endeavor (and accepted as true)[14] does not, as a matter of law, satisfy the default definition of "direct physical harm or loss to property." (E.g., *Childhelp, Inc. v. City of Los Angeles* (2023) 91 Cal.App.5th 224, 236 ["'[A] trial court may properly sustain a

---

[13] There are a number of other cases that examine these types of contamination in jurisdictions employing a definition of "direct physical loss or damage" that includes mere "loss of use" (e.g., *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.* (D.N.J. 2014) 2014 U.S. Dist. LEXIS 165232, *16-*17; *TRAVCO Ins. Co. v. Ward* (E.D. Va. 2010) 715 F.Supp.2d 699, 709-710; *Schlamm Stone & Dolan, LLP v. Seneca Ins. Co.* (N.Y. Sup. Ct. 2005) 800 N.Y.S.2d 356, *5); because we agree with the majority of California authority equating "loss of use" with "direct physical loss or damage," these other cases are irrelevant.

[14] There is also a limit to what "improbable" allegations we must accept as true. If, for instance, Endeavor had alleged that the evil wizard Voldemort had cursed its property with a pestilence spell, we would disregard that allegation.

29

general demurrer to a declaratory relief action without leave to amend when . . . the controversy presented can be determined as a matter of law'"]; accord, *Inns-by-the-Sea*, *supra*, 71 Cal.App.5th at p. 714 ["Additional allegations about the science behind the pandemic would not change th[e] analysis"].)  And to the extent Endeavor's allegation is read as an allegation that the presence of SARS-CoV-2 particles on surfaces satisfies the definition of "direct physical loss or damage to property," it is akin to an allegation that Endeavor's loss is covered by the policy; as such, it is a conclusion of law that we may disregard on review of a demurrer.  (*County of Santa Clara v. Superior Court* (2023) 14 Cal.5th 1034, 1041.)

Endeavor's parting argument is that we should be leery of the trial court's "shifting reasoning" between its two demurer rulings.  But whether the trial court's reasoning changed is irrelevant because our task is to evaluate the court's *ruling* not its *reasoning*.  (*People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12; *Kanter v. Reed* (2023) 92 Cal.App.5th 191, 203.)

\* \* \*

In light of our analysis that Endeavor cannot, as a matter of law, allege coverage under the policy, we have no occasion to reach the parties' further arguments regarding whether the contamination/pollution exclusion applies to bar coverage.

30

## DISPOSITION

The judgment is affirmed.  The insurers are entitled to their costs on appeal.

## **CERTIFIED FOR PUBLICATION**.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
 LUI


_____, J.
 CHAVEZ

31